KIMBALL, C.J.
|, This matter is before us pursuant to this Court’s appellate jurisdiction over cases in which a law has been declared unconstitutional by the district court. La. Const, art. V, § 5(D). The district court granted in part the Louisiana High School Athletic Association, Inc.’s (LHSAA’s) Motion for Summary Judgment, declaring La. R.S. 17:176(F), La. R.S. 17:176(G), and La. R.S. 17:236.3 (Title 17 statutes) are unconstitutional because they are prohibited special laws under La. Const, art. Ill, § 12(A). The district court further denied in part the LHSAA’s Motion for Summary Judgment to the extent the LHSAA requested a declaration it is not a “quasi public agency or body” as defined by La. R.S. 24:513(A)(l)(b)(v), and to the extent it requested a declaration La. R.S. 24:513(J)(4)(a) and (b) and La. R.S. 24:513(A)(l)(b)(v) (Title 24 statutes) are unconstitutional. For the reasons that follow, we affirm the district court’s ruling insofar as it granted the LHSAA’s Motion for Summary Judgment in part and found the Title 17 statutes are unconstitutional pursuant to La. Const, art. Ill, § 12(A)(7). We reverse the district [2court’s ruling to the extent it denied the LHSAA’s Motion for Summary Judgment and found the Title 24 statutes applicable and constitutional. We find La. R.S. 24:513(A) does not apply to the LHSAA because it is not a “quasi public body,” as defined by the statute. We also find La. R.S. 24:513(J)(4)(a) and (b) are unconstitutional under the Equal Protection Clause.
FACTS AND PROCEDURAL HISTORY
On September 28,1988, the LHSAA was formed as a Louisiana nonprofit corporation. Prior to its 1988 incorporation, the LHSAA was an unincorporated association, operating under the same name since 1920. The LHSAA was organized by a group of principals to promote and regulate interscholastic athletic competition. The LHSAA’s membership consists of high schools within Louisiana, which apply and are approved for membership in accordance with its articles of incorporation, constitution, and bylaws. The member schools of the LHSAA include private and public schools, and the private schools include religious and nonreligious schools. Each school that joins the LHSAA does so voluntarily and is not compelled to join by any state law.
*589 The LHSAA contends in recent years, the Louisiana Legislature has made numerous attempts to treat the LHSAA as if it did not have rights under the United States or Louisiana Constitutions. According to the LHSAA, the Legislature has interfered with the LHSAA’s internal operations by trying to make the internal rules and regulations for the LHSAA instead of allowing it to do so on its own. On November 5, 2010, the LHSAA filed a Petition for Declaratory Judgment and Permanent Injunction against the defendants, the State of Louisiana, the Louisiana State Board of Elementary and Secondary Education (BESE), Daryl G. Purpera, in his official capacity as the Louisiana Legislative Auditor (LLA), and James D. “Buddy” Caldwell, in his official capacity as Attorney General for the State of ^Louisiana.[1] The LHSAA requested that the district court issue a judgment declaring it to be a private corporation and declaring La. R.S. 17:176(F),[2] La. R.S. 17:176(G),[3] and La. R.S. 17:236.3[4] unconstitutional. The LHSAA alleged the Title 17 statutes interfere with its internal operations in violation of La. Const, art. Ill, § 12, which prohibits the Legislature from passing any law which amends, changes, and/or explains the charter of any private corporation. The LHSAA asserted La. |4R.S. 17:176(G) violates its right to equal protection and due process since the State does not define the word “family” as used in the rules, regulations, and bylaws of other private corporations and it seeks to apply this definition to the LHSAA rules retroactively. The LHSAA alleged La. R.S. 17:176(F) and La. R.S. *590 17:286.3 violate its right to equal protection because the State does not make the rules, regulations, or bylaws of any other private organization, including those similarly situated to the LHSAA. The LHSAA claimed since none of these statutes apply to other extracurricular activities, such as the cheerleading squad, the Key Club, and the band, these statutes violate the LHSAA’s right to equal protection because they treat the LHSAA different from other similar organizations.
The LHSAA asserted it was not the only private athletic association of high schools operating in the State of Louisiana. According to the LHSAA, another association recognized and approved by the Louisiana Department of Education is the Mississippi Private High School Association (MPHSA), which consists of approximately thirty-one Louisiana high schools.[5] The LHSAA asserted MPHSA functions similarly to the LHSAA by regulating interscholastic athletic competition for its members, but La. R.S. 17:236.3 does not require the Louisiana private high schools which are members of MPHSA to accept home school students as members of their school teams or to declare home school students at these schools eligible for interscholastic athletic competition. The LHSAA also claims there are associations of schools operating in Louisiana, which include both public and private schools, that have athletic competitions which the LHSAA does not sponsor and La. R.S. 17:236.3 does not apply to these associations. One such | ^organization is the Louisiana High School Rodeo Association (LHSRA). The LHSAA has member schools that belong to the LHSRA, but La. R.S. 17:236.3 does not require these schools to accept home schooled students as eligible students of the school’s rodeo team. The LHSAA also claimed none of the Title 17 statutes apply to other extracurricular activities, such as the cheerlead-ing squad, the Key Club, and the band. Thus, the LHSAA argued the Title 17 statutes violate its right to equal protection because the statutes treat the LHSAA different from other similar organizations.
The LHSAA further asserted the LLA had claimed the authority to audit the LHSAA’s financial records under La. R.S. 24:513(A)(l)(b)(v)[6] since it is a “quasi public body,” as defined therein. The LLA also claimed it had the right to receive a copy of the LHSAA’s annual audit by a private certified public accountant, and the right to audit the LHSAA books if such audit is ordered by the Legislative Audit Advisory Council (LAAC), pursuant to La. R.S. 24:513(J)(4)(a) and (b).[7] |fiThe *591 LHSAA sought a declaratory judgment that the Title 24 statutes do not apply to it or, alternatively, that the statutes violate the LHSAA’s right to due process and equal protection. The LHSAA argued these statutes do not apply to it because it is a private, nonprofit corporation. Alternatively, if the statutes do apply, the LHSAA alleged they are unconstitutional under the Equal Protection Clause because they do not apply to other similarly situated organizations, such as the LHSRA or the Beta clubs or Key clubs in Louisiana public and private high schools. The LHSAA also asserted La. R.S. 24:513(J)(4)(a) and (b) violate the Due Process Clause since the LAAC is not required to give the LHSAA notice of a possible audit upon consideration of cause.
On June 1, 2011, the LHSAA filed Motion for Summary Judgment, seeking a judgment as prayed for in its petition. Its motion was opposed by the State, BESE, and the LLA, but defendants chose not to file a cross-motion for summary judgment. The hearing on the Motion for Summary Judgment was held August 29, 2011, and the district court took the matter under advisement. On November 28, 2011, the district court issued a written ruling granting the LHSAA’s summary judgment motion in part and denying it in part. On March 22, 2012, the district court signed a a judgment, granting in part and denying in part the LHSAA’s Motion for Summary Judgment for the reasons assigned on November 28, 2011. The district court granted the motion in part and declared the Title 17 statutes are unconstitutional because they violate Article III, § 12 of the Louisiana Constitution. The district court denied the LHSAA’s Motion for Summary Judgment to the extent the LHSAA requested a declaration that it is not a “quasi public agency or body” as defined by La. R.S. 24:51S(A)(l)(b)(v), and to the extent it requested a declaration that La. R.S. 24:51S(J)(4)(a) and (b) and La. R.S. 24:513(A)(l)(b)(v) are unconstitutional.
In written reasons for judgment, the district court first addressed the Title 24 17statutes, finding them applicable and constitutional in this case. The district court concluded the LHSAA is a “quasi public body” for the limited purpose of La. R.S. 24:513(A)(l)(a) and La. R.S. 24:513(J)(4)(a), as defined by La. R.S. 24:513(A)(l)(b)(v), because it is subject to the Open Meetings Law, La. R.S. 42:11 et seq.,[8] and is partially funded by public monies. The district court relied upon Spain v. Louisiana High School Athletic Association, in which this Court held the LHSAA was a public body for the limited purpose of the Open Meetings Law, La. R.S. 42:5. 398 So.2d 1386 *592 (La.1981), The district court reasoned, “[wjhether the ruling in Spain applies only to the former unincorporated association is immaterial because the only thing that changed by incorporating in 1988 was the formal legal creation of the association.”
The district court also cited Property Insurance Association of Louisiana v. Theriot, which was decided after Spain and enumerated factors that must be considered when determining whether an entity is private or public. 09-1152 (La.3/16/10), 31 So.3d 1012 (PIAL). The district court concluded PIAL did not overrule Spain because Spain involved a specific statute that defined the conditions under which an entity may be deemed public for limited purposes and PIAL did not. The district court pointed out the Court in Spain held the LHSAA is partially funded by public money earned by state schools under their control at their athletic events and that there is a connexity between the regulatory functions of the LHSAA and a public body. The district court also found it “necessary to note” all employees of the LHSAA are allowed by legislative enactment to participate in the State of Louisiana Teacher’s Retirement System,[9] and that members of the IsLHSAA’s Executive Committee include one appointee by each of the following: 1) the State Superintendent of Education; 2) the President of the School Boards’ Association; 3) the President of the State Superintendents’ Association; 4) the State Speaker of the House of Representatives; and 5) the President of the State Senate. The district court found the connexity between the LHSAA and the State is not a casual, unintended one. Each has acknowledged and enjoyed the close relationship existing between them for decades, as evidenced by other statutory provisions that apply specifically to the LHSAA and its functions.[10]
The district court also denied the LHSAA’s claims that the Title 24 statutes violate its right to equal protection and due process. The written reasons for judgment do not provide any reasoning for this conclusion except that the district court found the statutes “serve both a legitimate state purpose and a rational basis.”
Turning next to the Title 17 statutes, the district court found that unlike the Title 24 statutes, defendants cite no specific underlying statutory authority that allows the Legislature to interfere with the internal operations of the LHSAA by enacting these statutes. The district court looked to the factors enumerated in PIAL to determine the status of the LHSAA and concluded it is a private entity. The district court subsequently found all three statutes are unconstitutional under La. Const, art. Ill, § 12 because they had the effect of changing, modifying or *593 19expanding upon the rules, regulations, and bylaws of a private, nonprofit corporation. The district court explained La. R.S. 17:176(G) modified the definition of the word “family” as used in the LHSAA’s bylaws, while La. R.S. 17:176(F) and La. R.S. 17:236.3 changed the LHSAA’s rules, regulations, and bylaws concerning the LHSAA’s eligibility rules. The district court further found the statutes do not serve any eompellmg state interest or rational basis, and they appear arbitrary and capricious on their face. Since each statute specifically identifies and singles out the LHSAA, the district court held they each violate the LHSAA’s equal protection and due process rights under the state and federal constitutions.
Before the March 22, 2012, judgment was entered in conformity with the written ruling, the LHSAA filed a Motion to Clarify Court’s Ruling and/or in the Alternative Motion for New Trial on December 6, 2011. The LHSAA sought clarification insofar as the district court declared it to be a “quasi public body” subject to the provisions of La. R.S. 24:513(A)(l)(b)(v), La. R.S. 24:513(J)(4)(a), and La. R.S. 24:513(A)(l)(a). The LHSAA asserted such a declaration was not requested in its Motion for Summary Judgment, nor did the defendants move for summary judgment on that issue. According to the LHSAA, the district court’s ruling should have simply stated its Motion for Summary Judgment seeking a declaration it is not a “quasi public body” is denied. Following a hearing on February 13, 2012, the motion was denied by a judgment signed on February 16, 2012.
The State and BESE (collectively “appellants”), but not the LLA, filed a timely Motion for Suspensive Appeal on April 19, 2012.[11] Appellants asserted the district court erred as a matter of law in concluding the application of the Title 17 ImStatutes to the LHSAA violates due process, equal protection, and La. Const, art. Ill, § 12. The LHSAA filed a timely answer to the appeal, asking this court to affirm the district court’s decision declaring the Title 17 statutes are unconstitutional. The LHSAA also sought a reversal of the district court’s decision finding the Title 24 statutes are constitutional and applicable to the LHSAA.
In their brief to this Court, appellants assert the district court erred as a matter of law in declaring the Title 17 statutes are unconstitutional. Appellants contend the legislature had the authority to enact the statutes because education and athletics are within the regulatory scope of the State. See Spain, 398 So.2d 1386. Since the Title 17 statutes clarify certain eligibility rules, appellants maintain they are neither arbitrary nor capricious and are rationally related to the important state interests of education and promoting high school athletics. Appellants contend the statutes do not violate the Equal Protection Clause because they do not treat the LHSAA different from other similarly situated associations.
In the LHSAA’s memorandum filed in support of its Motion for Summary Judgment, the LHSAA asserted the Title 17 statutes violate its right to equal protection because they do not apply to other similar organizations, such as the Mississippi Association of Independent Schools (MAIS), which is a high school athletic association that operates in Mississippi, Louisiana, and Arkansas, and has eighteen *594 Louisiana schools as members. The LHSAA claimed the Title 17 statutes also do not apply to the Louisiana Christian School Athletic Association (LCSAA), which has approximately thirty-one Louisiana high schools as members. Appellants argue the MAIS and the LCSAA are not similarly situated to the LHSAA because neither have a public school as a member. Since these organizations are different from the LHSAA and the Equal Protection Clause “does not deny to states the power to treat different classes of persons in different ways,” appellants assert there is no violation. Reed v. Reed, 404 U.S. 71, 75-76, 92 S.Ct. 253-54, 30 L.Ed.2d 225 (1971).
Appellants further argue the Title 17 statutes do not offend La. Const, art. Ill, § 12(A)(7) because they are not special or local laws and they do not amend the charter of a private corporation. Appellants contend the statutes are general laws because they pertain to matters of significant interest to the entire state and affect all Louisiana residents, even if some only indirectly. See Polk v. Edwards, 626 So.2d 1128, 1134 (La.1993). The statutes also do not amend the charter of the LHSAA because they only affect certain eligibility rules and the definition of terms in the LHSAA’s bylaws. According to appellants, Black’s Law Dictionary defines “charter” as “an instrument that establishes a body politic or other organization, or that grants rights, liberties, or powers to its citizens or members.” Black’s Law Dictionary 250 (8th ed.2004). Another definition of “charter” is “a governmental act that creates a business or defines a corporate franchise; also, the document evidencing this act.” A third definition of “charter” is “the organic law of an organization; loosely the highest law of any entity.” A “corporate charter” is defined as the “certificate of incorporation.” Id. Appellants argue the instrument that established the LHSAA is its articles of incorporation, not its bylaws. Thus, the LHSAA’s charter was not unconstitutionally amended by the Title 17 statutes. Appellants point out the district court declared the “rules, regulations and bylaws” of the LHSAA were affected, but it did not mention the articles of incorporation. Since the statutes are susceptible of a meaning which would maintain their constitutionality, appellants assert the district court erred in not adopting that interpretation. See City of New Orleans v. Louisiana Assessors’ Ret. & Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1.
The LLA filed a separate brief, asserting the district court properly found the LHSAA was subject to the LLA’s audit. The Title 24 statutes allow the LLA to “compile financial statements and to examine, audit, or review the books and |12accounts of ... public or quasi public agencies or bodies.” La. R.S. 24:513(A)(l)(a). A “quasi public agency or body” includes “[a]ny organization, either not-for-profit or for profit, which is subject to the open meetings law and derives a portion of its income from payments received from any public agency or body.” La. R.S. 24:513(A)(l)(b)(v). The LLA contends the LHSAA is a quasi public entity because it is subject to the Open Meetings Law and some of its membership dues come from public high schools. The LHSAA also receives a percentage of the gate receipts of many major tournaments, championships, playoff games, etc., and the proper use of those funds is a legitimate State interest or public concern. The LLA asserts the LHSAA’s distinction between self-generated and appropriated funds is not supported by law because if the Legislature intended the LLA to audit only those entities which receive tax-appropriated funds, it would have written the statute differently.
*595 The LLA contends the LHSAA’s reliance on PIAL is misplaced, as that case did not address the question of whether an entity is considered a “quasi public agency,” but merely found the entity in question was private. The LLA asserts the LHSAA has not met its burden of proving application of the Title 24 statutes violates its due process or equal protection rights. The LHSAA has not pointed out any person or association that is “similarly situated” because the associations cited in its Motion for Summary Judgment do not have any Louisiana public schools as members. Furthermore, other private entities have been declared subject to the Open Meetings Law. See Wayne v. Capital Area Legal Services Corp., 108 So.3d 103 (La.App. 1 Cir. 9/26/12). The LLA maintains the Title 24 statutes are not arbitrary and capricious and are rationally related to the legitimate interest of ensuring the proper use of State funds and promoting accountability and transparency in these organizations. The LLA contends requiring quasi public entities like the LHSAA to be audited allows the Legislature |1sto hold the entities accountable for the funds they receive and ensure they are performing their quasi public functions properly.
The Department of Education and the Governor filed an amicus brief, arguing the LHSAA performs a major policymaking, advisory, and administrative function within public education, a subject under the Legislature’s control. La. Const, art. VIII, § 1. The amici assert the LHSAA is a quasi public organization, carrying out activities which fall within the Legislature’s authority. High school athletics are a matter of public interest due to the important role athletics play in the State’s education system, and specifically because of the relationship between student eligibility and the State’s education reform efforts. The amici assert the Title 17 and Title 24 statutes are sound education policy, enacted by the Legislature in an exercise of its constitutional authority to provide education for the people of the State. Having to forego participation in high school athletics would deter many parents of student-athletes from exercising school choice, including home schooling. Such a deterrent thwarts the Legislature’s efforts to improve public schools by forcing them to face increased competition for students and parents choosing the best learning environment for their children. The amici point out other states have enacted similar legislation requiring state high school athletic associations to allow home school and private school students to participate in public school interscholastic sports.
In response, the LHSAA contends the district court properly held the Title 17 statutes violate equal protection, due process, and La. Const, art. Ill, § 12. The LHSAA maintains all of the same arguments it raised at the district court, but primarily argues the Title 17 statutes violate La. Const, art. Ill, § 12 because they change the eligibility rules adopted by members of the LHSAA. The LHSAA asserts its articles of incorporation specifically state the organization will be governed by its constitution and bylaws, such that any change to its bylaws | ^constitutes a change to its charter. In support, the LHSAA cites Trustees of Dartmouth College v. Woodward, (U.S.N.H.), 17 U.S. 518, 4 Wheat. 518, 4 L.Ed. 629 (1819), in which the Supreme Court held the school charter was a contract and the New Hampshire Legislature’s amendment to the charter was unconstitutional because it impaired the obligation of the contract. The LHSAA argues that by changing its internal rules, the Louisiana Legislature has confiscated a private organization without notice or just compensation.
The LHSAA contends there is no merit to appellants’ argument that the Ti- *596 tie 17 statutes are valid despite the constitutional prohibition of special laws because the LHSAA could not point to another entity possessing the same characteristics as the LHSAA. The uncontested facts show there are similar associations whose charter the Louisiana Legislature has not changed, such as the MAIS, the LCSAA, and the LHSRA. If the Title 17 statutes were justified due to a statewide interest in athletics, the LHSAA argues the statutes would have also changed the charters of these other organizations. Even if the LHSAA was the only high school athletic association in Louisiana, the LHSAA asserts the Legislature would still be prohibited from passing special laws that treat the LHSAA different from other private organizations. The LHSAA maintains the Title 17 statutes are not general laws because they specifically apply only to the LHSAA to change its bylaws. For instance, the LHSAA claims La. R.S. 17:176(G) was enacted to reverse an eligibility ruling the LHSAA made in the case of a student-athlete who had been ruled ineligible under its bona fide move rule.[12] The LHSAA ^argues La. R.S. 17:176(F) is also unconstitutional because it amends the charter and treats the LHSAA different from other similar organizations.[13] As for La. R.S. 17:236.3, prior to its enactment the LHSAA had a rule requiring home school students to enroll in a LHSAA member school in order to be eligible for one of its athletic teams. The LHSAA claims La. R.S. 17:236.3 is a denial of equal protection because it does not apply to other similarly situated corporations and associations, or to other extracurricular activities, such as band or choir. The LHSAA points out a home school student interested in playing a musical instrument cannot march at halftime with the band of an LHSAA member school, even though there may be home school students playing on the team. The LHSAA asserts requiring its member schools to accept home school students as members of their teams is arbitrary, capricious, and without rational basis.
The LHSAA also raises three assignments of error on appeal, asserting the district court erred in finding the Title 24 *597 statutes applicable to the LHSAA, concluding they are constitutional, and refusing to grant the LHSAA’s request for a permanent injunction against appellants to prevent them from enforcing these laws against the LHSAA.[14] Although Spain held the LHSAA’s unincorporated 11fipredecessor was subject to the Open Meetings Law, the LHSAA contends Louisiana courts have never found the present incorporated entity is subject to the Open Meetings Law. The LHSAA asserts it is not a public entity under PIAL and therefore, it is not subject to the Open Meetings Law. Since it is not subject to the Open Meetings Law, the LHSAA claims it is not a “quasi public entity” under La. R.S. 24:513(A)(l)(b)(v). The LHSAA contends being subject to the Open Meetings Law would violate its right to equal protection because it is the only organization which could ever be held subject to the Open Meetings Law when it is not a public entity under PIAL.[15] The LHSAA further asserts the phrase “derives a portion of its income from payments received from any public agency or body,” as found in La. R.S. 24:513(A)(l)(b)(v), suggests the Legislature intended the statute to apply to any entity which receives tax-appropriated funds from the State. The LHSAA argues it does not meet this requirement because its revenue is self-generated by the school athletic programs or other fundraisers held by its member schools. Thus, the Title 24 statutes are inapplicable because the LHSAA does not receive funds from a public agency or body.
The LHSAA also contends the district court erred by not finding the Title 24 statutes are unconstitutional for the same reasons it found the Title 17 statutes are unconstitutional.[16] According to the LHSAA, the Court in PIAL limited the LLA’s authority by clarifying what constitutes a public entity. The LHSAA contends the sole purpose of the Title 24 statutes is to single out one private entity (the LHSAA) |17and allow the LLA to audit its books, which is arbitrary and capricious. Further, the LHSAA contends the State, through the LLA, has no legitimate interest in looking into and publishing the LHSAA’s financial information because it has no power to control the LHSAA’s revenue collection or its spending. The purpose of an audit is to ensure monies are spent as they were intended to be spent and if not, to bring it to the attention of the appropriate body that can control *598 spending. The LHSAA asserts neither the LLA, the Legislature, nor the State has such power, as only the LHSAA has the power to monitor its spending.
STANDARD OF REVIEW
This appeal involves a review of the district court’s ruling partially granting the LHSAA’s Motion for Summary Judgment and declaring the Title 17 statutes are unconstitutional. It also requires our review of the district court’s partial denial of the LHSAA’s Motion for Summary Judgment regarding the applicability and constitutionality of the Title 24 statutes.
We will first conduct a constitutionality review of the Title 17 statutes. Statutes are generally presumed to be constitutional, and the party challenging the validity of the statute bears the burden of proving it is unconstitutional. State of Louisiana v. Hatton, 07-2377 (La.7/1/08), 985 So.2d 709, 719 (citing State v. Fleury, 01-0871, p. 5 (La.10/16/01), 799 So.2d 468, 472; State v. Brenner, 486 So.2d 101, 102 (La.1986); State v. Rones, 223 La. 839, 67 So.2d 99, 105 (1953)). Since the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the Legislature, the Legislature may enact any legislation the constitution does not prohibit. City of New Orleans v. Louisiana Assessors’ Ret. & Relief Fund, 05-2548, pp. 11-12 (La.10/1/07), 986 So.2d 1, 12 (citing Louisiana Mun. Ass’n v. State, 04-0227, p. 45 (La.1/19/05), 893 So.2d 809, 842; Polk v. Edwards, 626 So.2d 1128, 1132 (La.1993); Bd. of Comm’rs of Orleans Levee District v. Dept. of Natural Resources, 496 So.2d 281, 286 (La.1986)). This Court has consistently held legislative enactments are presumed valid and their constitutionality should be upheld when possible. Hatton, 07-2377 at 14, 985 So.2d at 719 (citing State v. Caruso, 98-1415, p. 1 (La.3/2/99), 733 So.2d 1169, 1170). Due to this presumption, a party challenging the constitutionality of a statute must cite the specific constitutional provision that prohibits the legislative action. State v. Granger, 07-2285, p. 8 (La.5/21/08), 982 So.2d 779, 786.
A different standard of review will apply to our review of the district court’s partial denial of the LHSAA’s Motion for Summary Judgment, since the district court did not declare the Title 24 statutes are unconstitutional. A motion for summary judgment may be granted if, and only if, “the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). The summary judgment procedure is favored in Louisiana and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). Appellate courts review a judgment granting or denying a motion for summary judgment de novo. Bonin v. Westport Ins. Corp., 05-0886, p. 4 (La.5/17/06), 930 So.2d 906, 910. Thus, appellate courts must ask the same questions the district court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Hood v. Cotter, 08-215, p. 9 (La.12/2/08), 5 So.3d 819, 824. The party seeking summary judgment has the burden of proving there is no genuine issue of material fact. If the movant satisfies the initial burden, the burden shifts to the party opposing summary judgment to present factual support sufficient to show he will be able to satisfy the evidentiary burden at trial. Suire v. Lafayette City-Parish Consolidated Government, 04-1459, pp. 26-27 *599 (La.4/12/05), 907 So.2d 37, 56 (citing La. C.C.P. art. 966(C)(2); Champagne v. Ward, 03-3211 (La.1/19/05), 893 So.2d 773, 775). Since the LHSAA would have the burden of proof at trial, it also had the burden to show there were no genuine issues of material fact and that it was entitled to judgment as a matter of law.

I. The Title 17 Statutes: La. Const, art. Ill, § 12(A)(7)

Article III, Section 12 of the Louisiana Constitution prohibits the Legislature from passing a local or special law regarding certain enumerated subjects, including amending, renewing, extending, or explaining the charter of a private corporation. La. Const, art. Ill, § 12(A)(7). While the Constitution does not define “local or special law,” in recent years this Court has made it clear that the terms are distinctive. Arshad v. City of Kenner, 11-1579, p. 6 (La.1/24/12), 95 So.3d 477, 482; Deer Enter., LLC v. Parish Council of Washington Parish, 10-0671, p. 4 (La.1/19/11), 56 So.3d 936, 941; Kimball v. Allstate Ins. Co., 97-2885, p. 4 (La.4/14/98), 712 So.2d 46, 50. The terms “local” and “special” are used in contradistinction to the term “general.” Deer Enter., 10-0671 at 5, 56 So.3d at 942 (citing Louisiana Paddleheels v. Louisiana Riverboat Gaming Comn., 94-2015, p. 7 (La.11/30/94), 646 So.2d 885, 889). General laws are those that operate “equally and uniformly upon all persons brought within the relations and circumstances for which they provide or that operate equally upon all persons of a designated class founded upon a reasonable and proper classification.” Arshad, 11-1579 at 6, 95 So.3d at 482 (citing Deer Enter., 10-0671 at 5, 56 So.3d at 942 (quoting Polk, 626 So.2d at 1134)); Kimball, 97-2885 at 4, 712 So.2d at 50 (citations omitted). The ultimate distinction between general laws and local or special laws is that the former affect the community as a whole, whether throughout the State or one of its subdivisions; and the latter affect private persons, private property, private or local interests. Deer Enter., 10-0671 at 6, 56 So.3d at 942 (citing Louisiana Paddlewheels, 646 So.2d at 889 (citing Polk, 626 So.2d at 1135)).
Generally, this Court applies a two-prong approach to determine whether a statute is unconstitutional under La. Const, art. Ill, § 12. The Court first considers whether the statute is a prohibited local or special law. If it is, the Court must then determine whether the statute concerns a prohibited subject matter listed in Article III, Section 12. As in Deer Enter., it is unclear in this case whether the district court found the Title 17 statutes are unconstitutional as special or local laws. The district court’s judgment provides “plaintiffs Motion for Summary Judgment is granted in part declaring that La. R.S. 17:176(G), La. R.S. 17:176(F), and La. R.S. 17:263.3 are unconstitutional, as those statutes violate Article III, section 12 of the Louisiana Constitution.” The district court’s written reasons for judgment do not offer any clarity, merely stating, “[t]he State’s conduct that modified, amended, extended, and/or explained the provisions of this private entity’s bylaws is a violation of Article 3 Section 12 of the Louisiana Constitution, which prohibits the Legislature from passing any law that amends, changes, or explains the charters of any private corporation.” Given the district court’s ambiguity as to whether these statutes constitute local or special laws, we must analyze both possibilities.
When the operation of a law is limited to certain parishes, it is immediately suspect as a local law. Deer Enter., 10-0671 at 6, 56 So.3d at 942 (citing Kimball, 712 So.2d at 51) (internal citations omitted). A statute is generally considered to *600 be local if it operates only in a particular locality or localities without the possibility of extending its coverage to other areas should the requisite criteria exist or come to exist there. Id. (citing Kimball, 712 So.2d at 51); Polk, 626 So.2d at 1134-35 (citing State v. Labauve, 359 So.2d 181, 182 (La.1978)). Thus, a law is not local if its coverage can extend to other localities or areas. Deer Enter., 10-0671 at 6, 56 So.3d at 942 (citing State v. Brazley, 00-923 (La.11/28/00), 773 So.2d 718). A law whose application and immediate effect is restricted to a | ^particular locality is also not considered local where persons throughout the state are affected by it or it operates on a subject in which the people at large are interested. Kimball, 97-2885 at 5, 712 So.2d at 51 (citing Livingston Downs Racing Ass’n Inc. v. State, 96-2890, p. 12 (La.12/2/97), 705 So.2d 149, 156; Louisiana Paddlewheels, 94-2015 at 7, 646 So.2d at 889; Polk, 626 So.2d at 1134).
It is evident from the plain language of the Title 17 statutes that their operation is not limited to a particular locality or localities within the state. Each statute concerns a specific eligibility rule of the LHSAA, thereby making it applicable solely to the LHSAA and its member schools throughout the state. To illustrate, La. R.S. 17:176(F) provides in pertinent part:
Notwithstanding any policy, rule, or regulation of the [LHSAA] to the contrary and effective for the 1997-1998 school year and thereafter, no student otherwise eligible to participate in an extracurricular interscholastic athletic activity shall be determined ineligible for or otherwise prohibited from participating in such activity during the student’s first year of high school because the student attends a state-approved nonpublic high school that is located outside the attendance zone recognized for such student by the [LHSAA] provided that both of the following apply:
(1) The high school that is attended by the student is operated by the same organization or federation of nonpublic schools that operated the state-approved nonpublic school that was attended by the student during the previous school year.
(2) There is no state-approved nonpublic high school available for the student to attend within the recognized attendance zone that is operated by the same organization or federation of nonpublic schools.
Similarly, La. R.S. 17:176(G) states:
For purposes of regulation of interscholastic athletic activity by the [LHSAA], the word ‘family’ as used in the rules, regulations, or bylaws of the Association shall mean ‘immediate family,’ and shall be defined as consisting of a student’s parents, spouse, children, and siblings, excluding step siblings. If the phrase “extended family” is used by the Association, it shall mean the immediate family together with collateral relatives. The provisions of this Subsection shall apply retroactively toJ^August 1, 2009.
Finally, La. R.S. 17:236.3(A) provides in pertinent part:
Beginning with the 2010-2011 school year and continuing thereafter, a student in a home study program approved by [BESE] in accordance with R.S. 17:236.1 shall be eligible as follows to participate in interscholastic athletic activities at a high school that is a member of the [LHSAA]....
Thus, the statutes apply in every parish in which an LHSAA member school is located. According to the LHSAA’s 2010-2011 Official Handbook, the LHSAA is composed of 396 member schools across the State of Louisiana. People throughout the state are affected by these laws because *601 they apply to all student-athletes attending LHSAA member schools. Since membership in the LHSAA is not mandatory, the number and geographic location of member schools can change as schools seek admission to or to withdraw from the LHSAA. It is possible for the Title 17 statutes to extend and apply to other areas of the state due to the ever-changing composition of the LHSAA. This Court has held, “[l]aws that operate over the whole territory of the state instead of just a particular locality [are] clearly general, and not local.” Kimball, 97-2885 at 4, 712 So.2d at 51 (internal citations omitted). We therefore conclude these statutes are not prohibited local laws.
A special law confers special privileges or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law. Deer Enter., 10-0671 at 9, 56 So.3d at 943-44 (citing Kimball, 97-2885 at 6, 712 So.2d at 52). A law is special if it “affects only a certain number of persons within a class and not all persons possessing the characteristics of the class.” Deer Enter., 10-0671 at 9, 56 So.3d at 944 (citing Teachers’ Retirement System of Louisiana v. Vial, 317 So.2d 179, 183 (La.1975)). Moreover, a special law is “directed to secure some private advantage or | ^advancement for the benefit of private persons.” Id. (citing Teachers’ Retirement System, 317 So.2d at 183). This Court has explained that the prohibition on special laws “represents an important safeguard against the abuse of legislative power on behalf of special interests.” Deer Enter., 10-0671 at 9, 56 So.3d at 944 (citing Teachers’ Retirement System, 317 So.2d at 183); Polk, 626 So.2d at 1135.
Appellants contend the Title 17 statutes are general laws because they pertain to a matter of significant interest to the entire state and affect all persons throughout the state, specifically all student-athletes, even if some only indirectly. We disagree. These statutes do not “operate equally and uniformly upon all persons brought within the relations and circumstances for which they provide” because they do not apply uniformly to all athletic associations or student-athletes in Louisiana. Arshad, 11-1579 at 6, 95 So.3d at 482. The statutes do not apply to other athletic associations operating in Louisiana, such as the MAIS, the LHSRA, or the LCSAA. While these other organizations are smaller than the LHSAA, they perform the same function of regulating interscholastic athletic competitions involving Louisiana high schools. By making these statutes applicable only to the LHSAA, the Legislature has effectively denied the LHSAA, a Louisiana corporation, the privilege of creating its own internal rules and regulations while preserving the rights of other athletic associations to do so. Thus, we conclude these Title 17 statutes are special laws.
We must next turn our attention to whether the Title 17 statutes are special laws that concern a prohibited subject matter listed in La. Const, art. Ill, § 12(A). Pursuant to La. Const, art. Ill, § 12(A)(7), the legislature is prohibited from passing a local or special law “[treating private corporations, or amending, renewing, extending, or explaining the charters thereof.” Although the defendants do not appear to contest the fact that the LHSAA is a private corporation, it is abundantly clear that the LHSAA is a private corporation under this Court’s ruling in PIAL. |j>4The issue before the Court in PIAL was whether the Property Insurance Association of Louisiana is a public or *602 private entity and subject to certain laws applicable only to public entities. In State v. Smith, this Court had previously specified four factors which determine an entity’s public or private character. 357 So.2d 505, 507-08 (La.1978). These factors are: 1) whether the entity was created by the legislature; 2) whether its powers were specifically defined by the legislature; 3) whether the property of the entity belongs to the public; and 4) whether the entity’s functions are exclusively of a public character and performed solely for the public benefit. Id. Although Smith did not specify whether all four factors must be met in order to find an entity was public, the Court in PIAL specifically held, “[A]ll four must be present in order for a court to determine that an entity is public.” 09-1152 at 3-4, 31 So.3d at 1015.
Applying the Smith factors to this case, it is clear the LHSAA is a private entity. The LHSAA was not created by the Legislature, but by a group of high school principals who wanted to better regulate and develop the high school interscholastic athletic program in Louisiana. The association was composed of Louisiana high schools who applied and were approved for membership, thereby agreeing to be bound by the rules and regulations promulgated by the LHSAA. The LHSAA’s powers derive exclusively from the constitution and internal rules approved by its initial member schools. In 1988, the LHSAA received a corporate charter from the Secretary of the State of Louisiana, in compliance with general state corporation law. Thus, the powers of the LHSAA are now specified in its articles of incorporation, as filed with the Secretary of the State of Louisiana. The defendants do not contend the Legislature created or defined the powers of the LHSAA. Since all four of the Smith factors must be met and the first two factors have not been met in this case, we conclude the LHSAA is a private corporation.
Having determined the LHSAA is a private corporation, we must determine ^whether the Title 17 statutes “amend, renew, extend, or explain” the LHSAA’s charter. Article XI of the LHSAA’s articles of incorporation provides in pertinent part:
Provisions for the regulation of the internal affairs of this corporation, except as provided in these articles, shall be determined and fixed by the Constitution and By-laws as adopted by the members of the corporation at any regular meeting of the members of the corporation .... The By-laws shall be amended by a vote of a majority of those members present and voting at any regular meeting. The Constitution and Bylaws, not in conflict with these articles of incorporation, of that unincorporated organization known as the Louisiana High School Athletic Association, shall be the Constitution and By-laws of the Louisiana High School Athletic Association, Inc. until such time as they are amended by the members in accordance with these Articles of Incorporation, the Constitution, and By-laws of this corporation.
Pursuant to Article XI, the LHSAA’s charter specifically states its bylaws can only be amended by a majority vote of its members present and voting at a regular meeting. The Official Handbook of the LHSAA, and the rules contained therein, constitute the LHSAA’s bylaws.
We find the Title 17 statutes amend the LHSAA’s bylaws because they specifically amend certain eligibility rules. More specifically, La. R.S. 17:176(G) amends the “Bona Fide Change of Residence” rule, Rule 1.15 in the 2010-2011 Official Handbook, because it defines the word “family,” as used therein. Subsection F amends the bylaws because it creates an exception to the LHSAA’s residence and transfer rules. *603 Pursuant to Subsection F, a student who attends a nonpublic school outside of his school attendance zone, who would normally lose a year of eligibility, remains eligible for athletics if the two conditions provided in the statute are met. By creating an exception to the LHSAA eligibility rules, Subsection F amends the bylaws. Finally, La. R.S. 17:286.3 amends the bylaws because it changes the LHSAA’s eligibility rule pertaining to home school students. While the prior rule required home school 12fiStudents to enroll at the LHSAA member school at which they sought to join an athletic team, this requirement was omitted from La. R.S. 17:236.3.
It is evident to this Court that by enacting these statutes, the Legislature has amended the bylaws of the LHSAA. The LHSAA’s articles of incorporation, which constitute its charter from the State, specify that the bylaws can only be amended by a majority vote of the member schools. By changing the bylaws, the Legislature has amended the LHSAA’s charter such that its bylaws can now be modified by a majority vote of its member schools or by the Legislature. Thus, the Title 17 statutes constitute prohibited special laws that amend or explain the charter of a private corporation. We therefore affirm the portion of the district court’s judgment granting the LHSAA’s Motion for Summary Judgment and declaring La. R.S. 17:176(F), La. R.S. 17:176(G), and La. R.S. 17:236.3 unconstitutional.
Since we have found the Title 17 statutes are unconstitutional under La. Const, art. Ill, § 12(A)(7), we need not address the LHSAA’s equal protection or due process claims.

II. Applicability and Constitutionality of the Title 24 Statutes

a. La. R.S. 24:S13(A) (1) (b) (v)

The portion of the district court’s judgment denying the LHSAA’s Motion for Summary Judgment regarding the applicability and constitutionality of the Title 24 statutes is generally a non-appealable, interlocutory judgment. La. C.C.P. arts. 968 and 2083. This Court has held, however, that an interlocutory ruling is reviewable on appeal of a final, appealable judgment in the case. People of the Living God v. Chantilly Corp., 251 La. 943, 207 So.2d 752, 753 (1968). In the instant case, the district court designated its judgment granting the LHSAA’s Motion for Summary Judgment in part as a final judgment under La. C.C.P. art. 1915(b). Since the parties appealed a final judgment in this case, it is appropriate for this |27Court to review the correctness of the district court’s denial in part of the LHSAA’s Motion for Summary Judgment.
The main issue raised by the LHSAA’s Motion for Summary Judgment is whether La. R.S. 24:513(A)(l)(b)(v), defining a “quasi public agency or body,” is applicable to the LHSAA. The statute gives the LLA the authority to examine the books and accounts of “[a]ny organization, either not-for-profit or for profit, which is subject to the open meetings law and derives a portion of its income from payments received from any public agency or body.” Thus, whether the statute applies to the LHSAA depends upon whether the LHSAA is subject to the Open Meetings Law and receives public funding. See La. R.S. 42:11 et seq. The district court’s judgment does not answer this question, as it merely denied the LHSAA’s motion “to the extent [the LHSAA] requests a declaration that it is not a quasi public agency or body as defined by La. R.S. 24:513(A)(l)(b)(v).” In written reasons for judgment, however, the district court reached the merits of this issue by writing:
Considering the evidence presented at the hearing on Plaintiffs Motion and the *604 law, this court concludes that the LHSAA is a “quasi public body” for the limited purpose of La. R.S. 24:513(A)(l)(a) and La. R.S. 24:513(J)(4)(a) as defined by, [sic] La. R.S. 24:513(A)(l)(b)(v). LHSAA is subject to the Opens [sic] Meeting Law and is partially funded by public monies. Therefore, Plaintiffs Motion for Summary Judgment on this issue is denied.
Thus, the district court found both statutory requirements were met and denied the LHSAA’s Motion for Summary Judgment in part because it found the LHSAA is a “quasi public body” under La. R.S. 24:513(A)(l)(b)(v).
At the outset, we must clarify that our previous finding that the LHSAA is a private entity under the factors set forth in PIAL does not affect our determination of whether the LHSAA is a “quasi public agency or body” pursuant to La. R.S. 24:513(A)(l)(b)(v). This Court recently explained in PIAL that it did not apply the | wSmith factors in Spain because “[W]e were solely concerned with whether the LHSAA was a public body as defined by statute.” 09-1152 at 12, 31 So.3d at 1020. In Spain, this Court held that even though prior cases had stated the LHSAA is a private, voluntary association, those cases, “did not deal with a positive legislative pronouncement which defined the conditions under which an entity must be deemed ‘public’ for a limited purpose. Since such a pronouncement is present in this case, the appellation ‘private, voluntary association’ cannot preclude the application of the Open Meetings Law.” 398 So.2d at 1390-91 (citing Seghers v. Cmty. Advancement, Inc., 357 So.2d 626 (La.App. 1 Cir.1978)). The Court in PIAL noted that there was no such positive legislative announcement at issue in the case. 09-1152 at 12, 31 So.3d at 1020.
In the instant case, like in Spain, there is a specific legislative pronouncement defining the conditions under which an entity will be deemed a “quasi public agency or body” for the limited purpose of being subject to the authority of the LLA. Thus, we must look to La. R.S. 24:513(A)(l)(b)(v) to determine whether the district court correctly concluded the LHSAA is a “quasi public body” for the limited purpose of La. R.S. 24:513(A).
It is clear from the district court’s reasons for judgment that it relied heavily upon Spain in concluding the LHSAA is a “quasi public body” under La. R.S. 24:513(A)(l)(b)(v). The sole issue before the Court in Spain was whether the Open Meetings Law applied to the LHSAA, which at that time was an unincorporated association. 398 So.2d 1386. When Spain was decided, the Open Meetings Law provided that “every ‘meeting’ of any ‘public body’ shall be open to the public unless excepted by law.” La. R.S. 42:5.[17] The term “public body” was further defined as follows:
“Public body” means village, town, and city governing | ^authorities; parish governing authorities; school boards, and boards of levee and port commissioners; boards of publicly operated utilities; planning, zoning, and airport commissions; and any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this Paragraph. “Public body” shall not include the legislature.
*605 La. R.S. 42:4.2.[18] In order to determine whether the LHSAA is subject to the Open Meetings Law, the Court had to decide whether the LHSAA fit under any of the categories listed in the definition of “public body.”
The Court began its analysis by looking at La. R.S. 42:4.1,[19] which provided:
It is essential to the maintenance of a democratic society that public business be performed in an open and public manner and that the citizens be advised of and aware of the performance of public officials and the deliberations and decisions that go into the making of public policy. Toward this end, the provisions of R.S. 42:4.1 through R.S. 42:10 shall be construed liberally.
Spain, 398 So.2d at 1390. Recognizing that the term “public officials” was not defined in the Open Meetings Law, the Court concluded it is an “obvious reference” to the term “public officer” found in La. R.S. 42:1. The statute defines “public officer” as any person holding a public office in the state, and defines “public office” as, “any state, district, parish or municipal office, elective or appointive, or any position as member on a board or commission, elective or appointive, when the office or position is established by the constitution or laws of this state.” The Court in Spain held, “[sjince BESE and school board members are public officers and the boards are public bodies, R.S. 42:4.1 is clearly designed to insure that citizens be permitted to observe their deliberations.” 398 So.2d at 1390. |anThe Court further noted La. R.S. 42:5 provides that each public body shall be prohibited from utilizing any means to circumvent the intent of the act. To protect these goals, the Court held it must construe the terms “committee” and “subcommittee” liberally. Spain, 398 So.2d at 1390.
The Court in Spain ultimately concluded the LHSAA and its official committees and subcommittees in their then-existing form constituted collective committees or subcommittees of the parish school boards or BESE for the purposes of the Open Meetings Law. 398 So.2d at 1390. The Court explained:
The LHSAA performs a function which is, by law, entrusted to the various bodies established for the regulation of public education. It is funded by public money earned by state schools at athletic events. It has established a comprehensive set of rules and regulations governing how public schools and their students must conduct themselves with regard to athletic and academic endeavors, all with the acquiescence and implied blessing of the legislature, [BESE], Superintendent of Education, and local school boards. Equally important is the degree of connexity between the regulatory functions of the LHSAA and the regulatory functions of a particular “public body” found in R.S. 42:4.2(A)(2). Here the connexity is close, since LHSAA [sic] perfoms a major policy-making, advisory and administrative function in an area that is within the primary control of public bodies listed in the Open Meetings Law.
Id. (internal citations omitted). The Court held the LHSAA was a public body and therefore, subject to the Open Meetings Law.
Since Spain has never been overruled, appellants argued, and the district court agreed, that the LHSAA is still a “public body” subject to the Open Meetings Law. We disagree, finding the reason *606 ing in Spain to be flawed. While the Court set forth the proper statutes for its analysis, it failed to properly apply former La. R.S. 42:4.2 to the facts of the case. That statute specifically provided that school boards are public bodies for purposes of the Open Meetings Law. Thus, BESE and parish school boards are clearly public bodies under the statute. The Court in Spain, however, failed to explain how the LHSAA, independently formed by high | Si school principals, constitutes a “committee or subcommittee” of BESE or the parish school boards. 398 So.2d at 1390. There is no analysis of the word “committee” or “subcommittee,” as used in La. R.S. 42:4.2, or explanation about how the LHSAA can be considered as an extension of BESE or parish school boards.
Instead, the Court focused on the “eon-nexity between the regulatory functions of the LHSAA and the regulatory functions of a particular ‘public body’ found in R.S. 42:4.2(A)(2).” The Court held the connexity, “is close since the LHSAA performs a major policy-making, advisory and administrative function in an area that is within the primary control of public bodies listed in the Open Meetings Law.” 398 So.2d at 1390. This “connexity” factor, however, is absent from the statutory definition of “public body.” The statutory definition includes “any other state, parish, municipal, or special district boards, commissions, or authorities, and those of any political subdivision thereof, where such body possesses policy making, advisory, or administrative functions, including any committee or subcommittee of any of these bodies enumerated in this Paragraph.” The statute, however, does not set forth any specific factors to be used in determining whether a body is a committee or subcommittee of any of the bodies enumerated in the statute.
The appropriate starting point for statutory interpretation is the language of the statute itself. State v. Expunged Record (No.) 249,044, 03-1940, p. 4 (La.7/2/04), 881 So.2d 104, 107; In re Louisiana Health Service and Indemnity Company, 98-3034, p. 10 (La.10/19/99), 749 So.2d 610, 615. When a law is clear and unambiguous and does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. See La. R.S. 1:4. We find the Court in Spain erred in looking beyond the plain language of La. R.S. 42:4.2 in concluding the LHSAA is a | ^committee or subcommittee of BESE or parish school boards. The Court relied upon other factors including the source of the LHSAA’s funding, the LHSAA’s functions, and the inclusion of LHSAA employees in the Teachers’ Retirement System of Louisiana before concluding the LHSAA is a public body. Black’s Law Dictionary defines “committee” as “[a] subordinate group to which a deliberative assembly or other organization refers business for consideration, investigation, oversight, or action.” Black’s Law Dictionary 273 (9th ed.2009). Under a plain reading of former La. R.S. 42:4.2, the phrase “committee or subcommittee of any of these bodies” refers to a committee formed by the public body itself.
In the instant case, there is no evidence to suggest the LHSAA was formed as a committee or subcommittee of BESE or any other parish school board. There is no evidence indicating BESE or the parish school boards have ever “referred business” to the LHSAA for its consideration, investigation, oversight or action. The parties agree in 1988, the LHSAA was formed as a Louisiana nonprofit corporation, the membership of which consists of high schools within Louisiana which apply and are approved for membership in accor *607 dance with the corporation’s articles of incorporation, constitution, and bylaws. This was a formal incorporation of the former unincorporated association that had been operating under the same name since 1920. Nothing in the LHSAA’s charter or bylaws suggest it was formed by BESE or parish school boards, or that BESE or parish school boards ever referred business to the LHSAA for its consideration. When the LHSAA became a Louisiana corporation in 1988, it further separated itself from BESE and the parish school boards and any notion that it might be a committee or subcommittee thereof.
For the above reasons, we overrule our decision in Spain and conclude the LHSAA is not a “public body” as defined by La. R.S. 42:13. Since we find the LHSAA is not a public body subject to the Open Meetings Law, the LHSAA | ^cannot be considered a “quasi public agency or body,” as defined by La. R.S. 24:513(A)(l)(b)(v). We need not address the second requirement of La. R.S. 24:513(A)(l)(b)(v), whether the LHSAA “derives a portion of its income from payments received from any public agency or body,” because under the applicable provision, an organization must be subject to the Open Meetings Law and receive such funding to fall under the definition of “quasi public agency or body.”
As we have concluded La. R.S. 24:513(A)(l)(b)(v) does not apply to the LHSAA, we need not address whether the statute is constitutional as applied to the LHSAA.

b. La. R.S. 24:513(J)(4)(a) and (b)

In partially denying the LHSAA’s Motion for Summary Judgment, the district court denied the LHSAA’s request that La. R.S. 24:513(J)(4)(a) and (b) be declared unconstitutional. In written reasons for judgment, the district court merely denied the LHSAA’s equal protection and due process claims, and found the statutes serve a legitimate state purpose and a rational basis. The statutory provisions read as follows:
(4)(a) Notwithstanding any provision of this Section to the contrary, any entity which establishes scholastic rules which are the basis for the State Board of Elementary and Secondary Education’s policy required by R.S. 17:176 to be adhered to by all high schools under the board’s jurisdiction shall not be required to be audited by the legislative auditor but shall file an audit with the legislative auditor and the Legislative Audit Advisory Council which has been prepared by an auditing firm which has been approved by the legislative auditor. Such entity shall submit such audit to the legislative auditor and the Legislative Audit Advisory Council.
(b) The Legislative Audit Advisory Council may order an audit by the legislative auditor upon a finding of cause by the council.
The parties’ arguments on this issue are minimal. The LHSAA contends the statutes should not apply because the fact that the Legislature adopts the LHSAA’s |34schoIastic rules as the minimum standard BESE must implement does not make the LHSAA a public entity. If the statutes do apply, the LHSAA asserts they are arbitrary and capricious because they single out one particular organization by description, the LHSAA, which violates the LHSAA’s equal protection and due process rights. Appellants reject these arguments, claiming these statutes are constitutional under the Equal Protection and Due Process Clauses.
We agree with the LHSAA that these statutes violate its right to equal protection. Despite our above finding that the LHSAA is not subject to the LLA’s *608 authority under La. R.S. 24:513(A), nothing in the statute suggests Subsection J(4) only applies to entities that meet the definition of “quasi public agencies or bodies” under La. R.S. 24:51S(A). Beginning with its equal protection claim, we find La. R.S. 24:513(J)(4)(a) singles out one organization based upon a decision by BESE to adopt the organization’s scholastic rules as its minimum scholastic requirements. This statute is arbitrary on its face because it allows BESE, a state agency, to decide what organization will be subject to the LLA’s authority by picking an organization whose scholastic rules will form the minimum basis for all of the schools governed by BESE. In its current state, La. R.S. 17:176(C) requires BESE to adopt a policy that requires high schools under its authority to adhere to the minimum scholastic rule adopted by the LHSAA. Thus, La. R.S. 24:513(J)(4)(a) has the effect of treating the LHSAA different from other similar organizations, such as the MAIS, the LHSRA, and the LCSAA, which establish scholastic rules for their members.
Since the challenged classification is based on grounds other than discrimination because of birth, race, age, sex, social origin, physical condition, or political or religious ideas, the party challenging the statute must show the statute fails to serve a legitimate government purpose. Beauclaire v. Greenhouse, 05-0765, p. 6 (La.2/22/06), 922 So.2d 501, 505-06 (citing State v. Expunged Record (No.) 249,044, 03-1940 at 10, 881 So.2d at 111; State v. Fleury, 01-0871, p. 7 (La.10/16/01), 799 So.2d 468, 473). We find the LHSAA has shown the statute does not further a legitimate state interest. Appellants contend the statute furthers the important state interest of ensuring state law is followed and funds are properly used. The problem with this argument, as the LHSAA points out, is that the State has no real, legitimate interest in looking at and publishing the LHSAA’s financial information because it has no power to control the LHSAA’s revenue collection or spending. The LHSAA has the sole power to raise money as it will and spend it as its governing authority, its Executive Committee, deems proper. Although the statute arguably concerns a legitimate state interest regarding how the LHSAA spends its revenue, since a portion of it comes from public high schools, we find this statute does not further that interest. If the LLA discovers discrepancies in the LHSAA’s audit, it has no authority to regulate the revenue collection or spending of the LHSAA, a private, nonprofit corporation. In its brief to this Court, the LLA claims the audit statutes “allow the State to judge the performance of ‘quasi public entities’ that receive public funds, deter corruption, assist in detecting possible violation of laws, ensure that public funds are handled in accordance with the law, and promote transparency and accountability.” The LLA fails to allege, much less show, that it can take any action to regulate the LHSAA’s revenue collection or spending.
Even assuming the statute furthers a legitimate state interest, we find La. R.S. 24:513(J)(4)(a) is not rationally related to the State’s alleged interest because it authorizes an audit based upon whether an organization’s scholastic rules are adopted by BESE. There is no explanation in the statute as to why the Legislature sought to tie an internal audit to an organization’s scholastic rules. We find regulating an organization’s revenue collection and spending is not rationally related to the organization’s scholastic rules. One involves accounting and Refinances of an entity, while the other concerns the grade point average student-athletes must maintain to remain eligible for high school athletics. Appellants fail to show, and we fail to see, how this statute is rationally relat *609 ed to a legitimate state end. Thus, we find La. R.S. 24:513(J)(4)(a) is unconstitutional under the Equal Protection Clause.
Since we have found La. R.S. 24:513(J)(4)(a) unconstitutional, we must also find La. R.S. 24:513(J)(4)(b) unconstitutional, as it cannot stand alone. La. R.S. 24:513(J)(4)(b) provides, “[t]he Legislative Audit Advisory Council may order an audit by the legislative auditor upon a finding of cause by the council.” This is in reference to the requirement in La. R.S. 24:513(J)(4)(a) that the entity file an audit with the LLA and the Legislative Audit Advisory Council. Thus, La. R.S. 24:513(J)(4)(b) applies only if La. R.S. 24:513(J)(4)(a) applies. We find La. R.S. 24:513(J)(4)(b) cannot be severed from La. R.S. 24:513(J)(4)(a) and must also be struck down as unconstitutional.
For the above reasons, we reverse the district court’s ruling to the extent it denied the LHSAA’s Motion for Summary Judgment, which sought a declaration that La. R.S. 24:513(J)(4)(a) and (b) are unconstitutional. We find these statutes are unconstitutional under the Equal Protection Clause.
CONCLUSION
For the foregoing reasons, we affirm the district court’s ruling to the extent it partially granted the LHSAA’s Motion for Summary Judgment and declared La. R.S. 17:176(F), La. R.S. 17:176(G), and La. R.S. 17:236.3 unconstitutional pursuant to La. Const, art. Ill, § 12(A)(7). These Title 17 statutes constitute prohibited special laws that “amend, renew, extend or explain” the charter of a private corporation, the LHSAA. We find the district court erred, however, in partially denying the LHSAA’s Motion for Summary Judgment, to the extent the LHSAA sought a declaration that it is not a “quasi public agency or body,” as |,^defined by La. R.S. 24:513(A)(l)(b)(v). We conclude the LHSAA is not a “quasi public agency or body” under the statute because it is not subject to the Open Meetings Law. We overrule our prior decision in Spain v. Louisiana High School Athletic Association, 398 So.2d 1386 (La.1981), in which the Court erred in concluding the former, unincorporated LHSAA was a “public body” for the limited purpose of La. R.S. 42:5, the Open Meetings Law, because it constituted a committee or subcommittee of BESE or parish school boards. We find the LHSAA is not a “public agency or body” for purposes of the Open Meetings Law and therefore, cannot be a “quasi public agency or body,” as defined in La. R.S. 24:513(A)(l)(b)(v). The district court also erred in denying the LHSAA’s Motion for Summary Judgment in part, to the extent the LHSAA sought a declaration that La. R.S. 24:513(J)(4)(a) and (b) are unconstitutional. We find these statutes are unconstitutional under the Equal Protection Clause because they are arbitrary and capricious and they are not rationally related to a legitimate state interest. We therefore reverse the portion of the district court’s judgment denying the LHSAA’s Motion for Summary Judgment and conclude La. R.S. 24:513(A)(l)(b)(v) does not apply to the LHSAA and La. R.S. 24:513(J)(4)(a) and (b) are unconstitutional.
Affirmed in Part; Reversed in Part; Rendered.
WEIMER, Justice, concurs and assigns reasons.
VICTORY, Justice, dissents and assigns reasons.

. Attorney General Caldwell was later dismissed by the district court, which ruling was never appealed.

. La. R.S. 17:176(F), enacted by La. Acts 1997, No.465, § 1, eff. June 23, 1997, provides:
Notwithstanding any policy, rule, or regulation of the Louisiana High School Athletic Association to the contrary and effective for the 1997-1998 school year and thereafter, no student otherwise eligible to participate in an extracurricular interscholastic athletic activity shall be determined ineligible for or otherwise prohibited from participating in such activity during the student's first year of high school because the student attends a state-approved nonpublic high school that is located outside the attendance zone recognized for such student by the Louisiana High School Athletic Association provided that both of the following apply:
(1) The high school that is attended by the student is operated by the same organization or federation of nonpublic schools that operated the state-approved nonpublic school that was attended by the student during the previous school year.
(2) There is no state-approved nonpublic high school available for the student to attend within the recognized attendance zone that is operated by the same organization or federation of nonpublic schools.

. La. R.S. 17:176(G), enacted by La. Acts 2010, No.691, § 1, eff. June 29, 2010, provides:
For purposes of regulation of interscholastic athletic activity by the Louisiana High School Athletic Association, the word "family” as used in the rules, regulations, or bylaws of the Association shall mean "immediate family”, and shall be defined as consisting of a student’s parents, spouse, children, and siblings, excluding step siblings. If the phrase "extended family” is used by the Association, it shall mean the immediate family together with collateral relatives. The provisions of this Subsection shall apply retroactively to August 1, 2000.

. La. R.S. 17:236.3(A), also enacted by La. Acts 2010, No.691, § 1, eff. June 29, 2010, provides in pertinent part:
Beginning with the 2010-2011 school year and continuing thereafter, a student in a home study program approved by the State Board of Elementary and Secondary Education in accordance with R.S. 17:236.1 shall be eligible as follows to participate in interscholastic athletic activities at a high school that is a member of the Louisiana High School Athletic Association....

.Although the LHSAA mentions the MPHSA in its original petition, this was likely in error, as the organization was called the Mississippi Private School Association (MPSA). The MPSA changed its name in July 2009 to the Mississippi Association of Independent Schools (MAIS). The MAIS is a high school athletic association that operates in Mississippi, Louisiana, and Arkansas, and has eighteen Louisiana schools as members. See Rocky Higginbotham, MPSA Makes Immediate Name Change, Is Now MAIS, The Meridian Star, August 4, 2009, http://meridianstar.com/sportsI xl 896313921/MPSA-makes-immediate-name-change-is-now-MAIS

. La. R.S. 24:5I3(A)(l)(b)(v) provides in pertinent part:
A.(l)(b) For the sole purpose of this Subsection, a quasi public agency or body is defined as:
[[Image here]]
(v) Any organization, either not-for-profit or for profit, which is subject to the open meetings law and derives a portion of its income from payments received from any public agency or body.

. In its petition, the LHSAA improperly cites the statute as La. R.S. 24:513(I)(4)(a) and (b). The correct citation is La. R.S. 24:513(J)(4)(a) and (b). La. R.S. 24:513(J)(4)(a) and (b) provide in pertinent part:
*591 (4)(a) Notwithstanding any provision of this Section to the contrary, any entity which establishes scholastic rules which are the basis for the State Board of Elementary and Secondary Education's policy required by R.S. 17:176 to be adhered to by all high schools under the board’s jurisdiction shall not be required to be audited by the legislative auditor but shall file an audit with the legislative auditor and the Legislative Audit Advisory Council which has been prepared by an auditing firm which has been approved by the legislative auditor. Such entity shall submit such audit to the legislative auditor and the Legislative Audit Advisory Council.
(b) The Legislative Audit Advisory Council may order an audit by the legislative auditor upon a finding of cause by the council.

. The Open Meeting Law was previously found in La. R.S. 42:4.1 et seq. La. R.S. 42:4.1 through 42:13 were redesignated as La. R.S. 42:12 through 42:28 by La. Acts 2010, No.861, § 23. La. R.S. 42:4.1.1, as added by La. Acts 2010, No.861, § 18, was redesignated as La. R.S. 42:11 by Acts 2010, No.861, § 23. La. R.S. 42:11 currently provides, “[t]his Chapter shall be known and may be cited as the 'Open Meetings Law.' ”

. Part III of Chapter 2 of Title 17, “State Teachers’ Retirement System,’’ consisting of Subparts A to G, was transferred to Chapter 2 of Title 11 of the Louisiana Revised Statutes pursuant to La. Acts 1991, No.74, § 3, eff. June 25, 1991. La. R.S. ll:701(33)(a)(viii) currently provides “Teacher” shall mean any of the following:
(viii)(aa) Except as otherwise provided in this Item, the director, secretary, staff members, or any other individual employed by the Louisiana High School Athletic Association on or before June 30, 2011.
[[Image here]]
(cc) Any individual employed by the Louisiana High School Athletic Association on or before June 30, 2011, who has a valid Louisiana teacher's certificate shall be required to participate in the system provided the person satisfies all other eligibility criteria set forth in this Chapter.

. The district court did not elaborate upon this statement.

. The LLA did not join in that motion because the district court simply denied summary judgment on the LHSAA’s claims regarding the Title 24 statutes and that portion of its ruling was not certified as a final judgment for purposes of appeal in accordance with La. C.C.P. art. 1915(B).

. The "Bona Fide Change of Residence Rule" provides that if a family moves from one attendance zone to another, it must be a legitimate move. See Rule 1.15 in the 2010-2011 Official Handbook of the LHSAA. According to Rule 1.15.1, the student’s parents must "abandon their former home as a residence and make a permanent move into a home that is their sole residence in another school district/attendance zone. A change of residence shall be made with the intent that it is permanent.” Rule 1.15.6 further provides the original residence "shall not be used by any relative of the student except under certain conditions.” The LHSAA contends the bona fide move rule exists because some families pretend to move by renting an apartment, trailer or otherwise obtaining temporary housing so their child can attend a school outside of the LHSAA attendance zone without losing a year of eligibility.

. The LHSAA also raised several new arguments in this appeal, asserting: 1) the Title 17 statutes violate La. Const, art. I, 23 and U.S. Const, art. I, § 10 because they impair the obligation of contracts: 2) La. R.S. 17:176(G) inappropriately applies retroactively; 3) the Title 17 statutes constitute a denial of religious liberty and the inappropriate entanglement of government with religious institutions; 4) La. R.S. 17:176(F) imposes a duty on a private association to enforce a state law when the organization has no authority or ability to do so and that the failure to define what is meant by “organization or federation” is in and of itself a denial of due process; and 5) La. R.S. 17:176(F) and La. R.S. 17:236.3 violate substantive due process rights such as the freedom of association and freedom of assembly. Since these arguments are being raised for the first time on appeal, they are barred from our review. See Segura v. Frank, 93-1271, p. 15 (La.1/14/94), 630 So.2d 714, 725.

. On July 19, 2012, appellants filed a Motion to Strike Appellee's Answer to Appeal, or in the alternative, for an Order Fixing a Separate Briefing Schedule on the Answer to Appeal. Appellants argued an answer to the appeal is procedurally improper because the district court did not render judgment against the LHSAA, but simply rendered a non-final judgment declining to grant all the relief requested by the LHSAA. In contrast, the LHSAA argued it was aggrieved by the portion of the judgment denying summary judgment on the Title 24 claims and it is entitled to seek relief in this Court. This Court denied the Motion to Strike on September 11, 2012.

. The LHSAA again raises new arguments on appeal by asserting the Title 24 statutes violate the LHSAAs right to privacy under the Fourth and Fifth Amendments to the U.S. Constitution and Article I, Section 5 of the Louisiana Constitution. Although the LHSAA asserts this argument was raised in its memorandum filed in support of its Motion for Summary Judgment, a plea of unconstitutionality must be made in a pleading, not a memorandum. See Vallo v. Gayle Oil Co., Inc., 94-1238, pp. 8-9 (La.11/30/94), 646 So.2d 859, 865. Thus, this issue is not properly before the Court.

.The LHSAA also asserts if it is subject to the Open Meetings Law, it would constitute a violation of its right to privacy under La. Const, art. I, § 5. This argument, however, was not raised at the district court and is therefore barred from this Court’s review. See Segura, 93-1271 at 15, 630 So.2d at 725.

. This statute was redesignated as La.- R.S. 42:14 pursuant to Acts 2010, No. 861, § 23.

. This statute was redesignated as La. R.S. 42:13 pursuant to Acts 2010, No. 861, § 23.

. This statute was redesignated as La. R.S. 42:12 pursuant to Acts 2010, No. 861, § 23.