**GREGORY JONES, JR.**

**VERSUS**

**THE BOOT BAR & GRILL, C. NAPCO, INC., CRAIG NAPOLI, NANCY NAPOLI, ALINE NAPOLI, ROBERT HARRIS, JOHN DOE**

\*     **NO. 2022-CA-0154**

\*

    **COURT OF APPEAL**

\*

    **FOURTH CIRCUIT**

\*

    **STATE OF LOUISIANA**

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-11174, DIVISION "D"
Honorable Nakisha Ervin-Knott, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Judge Joy Cossich Lobrano, Judge Paula A. Brown, Judge Dale N. Atkins)

G. Karl Bernard
KARL BERNARD LAW, LLC
1615 Poydras Street, Suite 101
New Orleans, LA 70112

       COUNSEL FOR PLAINTIFF/APPELLANT

Joanne P. Rinardo
Denia S. Aiyegbusi
Melissa M. Lessell
DEUTSCH KERRIGAN, L.L.P.
755 Magazine Street
New Orleans, LA 70130

       COUNSEL FOR DEFENDANT/APPELLEE

                **AFFIRMED**
                **October 5, 2022**

DNA
JCL
PAB

Plaintiff/Appellant, Gregory Jones, Jr. ("Mr. Jones"), seeks review of the trial court's November 30, 2021 judgment, which granted the Motion for Summary Judgment filed by Defendant/Appellee, CJN Inc. d/b/a The Boot ("CJN"), and dismissed with prejudice all claims against CJN. The November 30, 2021 judgment also granted CJN's Motion to Strike portions of Mr. Jones' affidavit and exhibits attached to his opposition to the Motion for Summary Judgment. For the following reasons, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of a physical altercation between Mr. Jones and Robert Harris Elledge ("Mr. Elledge") that occurred late on November 22, 2013. On that evening, Mr. Jones, who was a student at Loyola University, went with his friend Jonathan Malbrue ("Mr. Malbrue") to the Boot, a bar near Loyola and Tulane Universities located at Zimple and Broadway Streets. After spending some time inside the Boot, Mr. Jones and Mr. Malbrue walked outside where they encountered Wynn O'Donnell ("Ms. O'Donnell"), a Tulane University student who was waiting for a pizza from a restaurant called the Dough Bowl. Although the Dough Bowl was located inside the Boot, it had an outdoor window for takeout

1

service, and it was a separate entity from the Boot. All parties agree that Mr. Jones approached Ms. O'Donnell and engaged her in conversation. Ms. O'Donnell was accompanied that night by her boyfriend, Mr. Elledge. Mr. Jones and Mr. Elledge exchanged words regarding Mr. Jones' interaction with Ms. O'Donnell, and following soon thereafter the two men engaged in a scuffle. During this altercation, Mr. Jones suffered injuries to his eye. The manager of the Dough Bowl separated the men, and Ms. O'Donnell and Mr. Elledge subsequently left the scene.

### MR. JONES' PETITION FOR DAMAGES

On November 20, 2014, Mr. Jones filed a Petition for Damages ("Petition") naming the Boot, the purported corporation owning the Boot; the individual owners of the Boot; Mr. Elledge, alleging him to be an employee of the Boot;[1] and John Doe, a supposed employee of the Boot whom Mr. Jones contends held him from behind while Mr. Elledge punched him. A previous Motion for Summary Judgment dismissed the individual owners; and Mr. Jones subsequently amended his Petition several times to correct the names of the parties, including substituting an unknown legal successor for Mr. Elledge, who is deceased.[2]

### CJN'S JULY 14, 2021 MOTION FOR SUMMARY JUDGMENT

On July 14, 2021, CJN filed a Motion for Summary Judgment, contending that it was entitled to summary judgment because Mr. Jones would be unable to show that Mr. Elledge was working for the Boot at the time of the altercation. Regarding John Doe, CJN noted that Mr. Jones had neither identified him nor

---

[1] Mr. Jones initially listed Mr. Elledge as "Mr. Harris."

[2] According to the record before this Court, Mr. Elledge died by suicide sometime after the events in this case occurred.

demonstrated that he was an employee of the Boot. Alternatively, CJN argued that whether Mr. Elledge or John Doe were working the night of the subject incident was immaterial "because an alleged assault off CJN's premises would have been totally unrelated to [their] duties and, thus, outside the course and scope of [their] employment with CJN." In sum, CJN argued that "[a]ny claims of negligence against CJN must be dismissed because no on-duty Boot employee was involved in the altercation."

CJN also attached numerous exhibits to its Motion for Summary Judgment, including (1) Mr. Jones' January 25, 2016 deposition; (2) Mr. Malbrue's September 28, 2015 and January 22, 2016 affidavits; (3) Mr. Elledge's August 13, 2015 affidavit; (4) Ms. O'Donnell's August 30, 2015 affidavit; (5) Mr. Brinich's June 7, 2016 affidavit; (6) Chad Maiuri's ("Mr. Maiuri") September 3, 2015 affidavit; (7) Mr. Maiuri's January 18, 2017 deposition; and (8) Aline Napoli's ("Ms. Napoli") February 2, 2016 affidavit. Each of these exhibits is discussed in turn.

**(1) Mr. Jones' January 25, 2016 Deposition**

CJN attached Mr. Jones' January 25, 2016 deposition as an exhibit to its Motion for Summary Judgment. At the deposition, Mr. Jones testified that he encountered Ms. O'Donnell and Mr. Elledge at the Dough Bowl's outdoor tables. When asked whether Mr. Elledge had been inside the Boot prior to the altercation, Mr. Jones answered, "I [do not] know." Mr. Jones further explained that "[t]he first time that [he] saw [Mr. Elledge] was when [Mr. Elledge] approached [him] when [he] was having a conversation with [Ms. O'Donnell]."

When asked why he presumed that Mr. Elledge worked for the Boot on the night of the subject incident, Mr. Jones responded that "one of the employees told

3

[him] that [Mr. Elledge] was working at The Boot." He described the employee who provided the information as "[o]ne of the bouncers" and as "a large white male" whose height he estimated to be six feet, two inches. In particular, Mr. Jones testified that the employee "told [him] that [Mr. Elledge's] name was Harris and that he does work at The Boot." However, when asked whether the employee told him that Mr. Elledge had worked that evening, Mr. Jones answered, "[N]o."

Regarding John Doe, Mr. Jones testified that he turned and looked at a man who grabbed him from behind during the altercation and that the man was wearing a Boot t-shirt, so he assumed that the man was an employee. He admitted he had not seen the man inside the Boot earlier that evening, and he did not know if the man was on duty at the time of the altercation.

**(2) Mr. Malbrue's September 28, 2015 and January 22, 2016 Affidavits**

While in his initial, September 28, 2015 affidavit Mr. Malbrue stated that both Mr. Elledge and the unknown man who held Mr. Jones were wearing Boot employee t-shirts, he admitted in his subsequent, January 22, 2016 affidavit that he had no firsthand knowledge if the man who fought with Mr. Jones was working at the Boot that night or at the time of the fight. Further, he stated that he had no knowledge if the person who broke up the fight, whom he stated was wearing a Boot t-shirt, was an employee or was working there that night.

**(3) Mr. Elledge's August 13, 2015 Affidavit**

CJN attached Mr. Elledge's August 13, 2015 affidavit to its Motion for Summary Judgment. Therein, Mr. Elledge stated that while he was employed by the Boot on the date of the subject incident, he "was off that evening" and "spent the evening with [his] girlfriend and some other friends." Additionally, he attested

that "[n]o [other] Boot employee was involved in the brief altercation" and that "[n]o one was holding [Mr.] Jones . . . ."

**(4) Ms. O'Donnell's August 30, 2015 Affidavit**

In her affidavit, Ms. O'Donnell attested that on the night of the subject altercation, she "spent the entire evening with" her then-boyfriend, Mr. Elledge. Though she identified Mr. Elledge as an employee of the Boot, she stated that "[h]e had been off from work all that day and evening." Additionally, she provided that "[a]t no time during the brief altercation, did [she] see any other person grab or hold [Mr.] Jones."

**(5) Mr. Brinich's June 7, 2016 Affidavit**

In his affidavit, Mr. Brinich identified himself as the manager of the Dough Bowl. He attested that CJN did not own the Dough Bowl. He provided that he knew Mr. Elledge and Ms. O'Donnell from his job at the Dough Bowl.

Mr. Brinich stated that he was working on the night of the subject incident and that Mr. Elledge and Ms. O'Donnell were waiting for a pizza in front of the convenience store attached to the Boot prior to the altercation. Further, Mr. Brinich attested that Mr. Elledge "was not working that night and was on a date with" Ms. O'Donnell. He stated that he "observed no one holding [Mr. Jones] during the altercation" and "observed no on-duty Boot employee involved in the altercation." He declared that he broke up the altercation between Mr. Jones and Mr. Elledge and was wearing a Dough Bowl t-shirt at the time.

**(6) Mr. Maiuri's September 3, 2015 Affidavit**

CJN attached both the deposition and the affidavit of Mr. Maiuri as exhibits to its Motion for Summary Judgment. In his September 3, 2015 affidavit, Mr. Maiuri identified himself as the general manager of the Boot on the night of the

altercation. He attested that as part of his general manager duties, he scheduled the work shifts of the employees and that Mr. Elledge did not work on the night of the subject altercation because he had not scheduled Mr. Elledge to work.

Mr. Maiuri stated that "[t]he Dough Bowl was not part of [t]he Boot." He further explained that he found out about the fight from Mr. Brinich after it occurred. He declared that "[n]o on-duty Boot employee was involved in the incident as they would have reported any altercation to" him.

### (7) Mr. Mauri's January 18, 2017 Deposition

Likewise, in his deposition, Mr. Maiuri testified that while he was the general manager of the Boot and its attached convenience store, he had no authority over the Dough Bowl. He stated that the Dough Bowl had a table outside its walk-up window with benches.

Mr. Maiuri testified that the Boot "uniform" consisted of a navy blue t-shirt with "The Boot" and "Staff" written in white on the front and "Staff" written in white on the back. Further, he stated that he told his employees not to wear their shirts when not working, but the employee manual did not mention this. He also noted that the Boot sells t-shirts with its name on it, and some sold at that time were blue with white writing on them.

Regarding Mr. Elledge, Mr. Maiuri stated that he was employed as a door person by the Boot but was not working on the night of the altercation. Mr. Maiuri stated that the Boot usually had two or three security men who worked per night. He explained that he did not file an incident report or report the subject altercation to the police because it did not happen at the Boot and his security personnel were not involved in breaking up the fight.

**(8) Ms. Napoli's February 2, 2016 Affidavit**

Attached to CJN's Motion for Summary Judgment was the February 2, 2016 affidavit of Ms. Napoli. Therein, she identified herself as "a current officer for CJN, Inc., which owns and operates The Boot," explaining that she has "been involved in the business since 1986[.]" Ms. Napoli identified the Dough Bowl as a separate entity from the Boot.

Regarding shirts with the Boot logo, she attested that the Boot did not have a policy whereby "(1) an employee may not wear a shirt with a Boot logo when not working or when no longer employed, (2) must change out of the shirt when his or her shift has ended, (3) that the shirt may not be given away to a non-employee, or (4) that the shirt must be returned to the Boot when the individual is no longer employed[.]"

Additionally, Ms. Napoli stated in her affidavit that the Boot has a policy requiring on-duty employees to report any involvement in an altercation with a customer to the manager on duty upon penalty of termination of employment. She identified Mr. Maiuri as the manager on duty on the night of the subject altercation.

As to the security guards or "bouncers," Ms. Napoli stated that, at the time of her affidavit, the Boot had employed the same bouncers for almost five years, identifying them as "African-American and over 6' in height." She also declared that the Boot did not employ any Caucasian bouncers at the time of the subject incident.

***Mr. JONES' AUGUST 19, 2021 OPPOSITION TO CJN'S MOTION FOR SUMMARY JUDGMENT***

Mr. Jones filed an Opposition to CJN's Motion for Summary Judgment ("Opposition") on August 19, 2021. Therein, he asserted that "[t]here exists a material issue of fact as to whether [CJN is] vicariously liable under the doctrine of respondeat superior[.]" In support of his Opposition, Mr. Jones attached his affidavit, which was dated August 19, 2021. In pertinent part, the affidavit stated:

> 17.    [Mr. Jones] asked Ms. O'Donnell if she were a student at Loyola. In response, Ms. O'Donnell smiled and told him that she was enrolled at Tulane.
>
> . . . .
>
> 19.    [Mr. Jones] heard someone yell at him from behind, "What are you doing talking to her?"
>
> . . . .
>
> 22.    [Mr.] Elledge yelled angrily at [Mr.] Jones, telling him to "leave."
>
> . . . .
>
> 27.    [An] unidentified individual yelled at [Mr.] Elledge and instruct[ed] him to "leave."
>
> . . . .
>
> 30.    Before leaving, [Mr. Jones] spoke with another Boot employee at the scene. He was told that the guy that hit him was "Harris" and that he was employed by The Boot.
>
> . . . .
>
> 34.    On January 24, 2014, [Mr.] Elledge was charged with Battery and was arraigned. See Exhibit P-1.
>
> . . . .
>
> 37.    On January 20, 2016, [Mr. Jones], through his attorney, requested the opportunity to depose [Mr.] Elledge. See Exhibit P-2.

. . . .

40. [Mr. Jones'] attorney[] made several attempts to serve a Notice of Deposition on [Ms.] O'Donnell but [was] unsuccessful. See Exhibit P-3.

41. [The] Orleans Parish Sheriff's Office attempted to serve Ms. O'Donnell at the Superdome during her college graduation ceremony.

42. The Sheriff was unsuccessful.

43. Upon information and belief, Ms. O'Donnell relocated to California.

Mr. Jones also attached multiple exhibits to his Opposition, including a May 4, 2016 "New Orleans Municipal Court Case Chronology Report" concerning Mr. Elledge (P-1); a January 20, 2016 e-mail from counsel for Mr. Jones to counsel for CJN asking to depose Mr. Elledge and Ms. O'Donnell (P-2); and a May 17, 2017 letter from counsel for Mr. Jones to the Clerk of Court for Orleans Parish Civil District Court requesting the issuance of a subpoena to Ms. O'Donnell (P-3).

### CJN'S SEPTEMBER 21, 2021 REPLY IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT

On September 21, 2021, CJN filed a "Reply in Further Support of Motion for Summary Judgment" ("Reply"). In the Reply, CJN put forth, in part, a "Motion to Strike Portions of [Mr.] Jones' Affidavit and Exhibit[s] P[-]1[, P-2, and] P[-]3 Submitted with Opposition Memorandum" ("Motion to Strike"). In particular, CJN sought to strike portions of Mr. Jones' August 19, 2021 affidavit (Paragraphs 17, 19, 22, 27, and 30), contending that they constituted incompetent summary judgment evidence because they were inadmissible hearsay. CJN also argued that other portions of Mr. Jones' affidavit (Paragraphs 34, 37, 40-43) should be struck because they were not based on his personal knowledge. Further, CJN sought to strike Exhibits P-1, P-2, and P-3 attached to Mr. Jones' Opposition and asserted

9

that these were also incompetent pieces of evidence for summary judgment because they were not "authenticated by [Mr.] Jones or even identified as true and correct copies of the documents they purport to be." In sum, CJN argued that those portions of Mr. Jones' affidavit and Exhibits P-1, P-2, and P-3 should be struck and disregarded for purposes of the Motion for Summary Judgment.

***October 27, 2021 HEARING ON CJN's MOTION***

The trial court conducted a hearing on the Motion for Summary Judgment on October 27, 2021, and orally found that CJN "met its burden in establishing that it is entitled to judgment as a matter of law." The trial court noted that CJN had "provided evidence that its employee was off duty at the time the altercation occurred and that the altercation occurred outside of the premises" but that Mr. Jones had not provided "anything [to] rebut[] [CJN]'s motion . . . ." Regarding CJN's Motion to Strike, the trial court stated that "[the subject portions of the affidavit to which CJN objected are] based on assumptions and not personal knowledge, even though they are in the document entitled Affidavit. So because of that, the affidavit and those other exhibits that are not properly attached, they will be stricken from the record." At the close of the hearing, the trial court orally granted CJN's Motion for Summary Judgment.

***NOVEMBER 30, 2021 JUDGMENT***

In a November 30, 2021 judgment, the court granted CJN's Motion for Summary Judgment and also struck several paragraphs of Mr. Jones' affidavit and Exhibits P-1, P-2, and P-3 filed in support of his Opposition. The judgment stated, in pertinent part:

> After considering the Motion for Summary Judgment and accompanying Memorandum in Support and all exhibits thereto, the Opposition Memorandum and all exhibits thereto, the Reply

10

Memorandum, and the undisputed facts, applicable law, and for reasons orally assigned at the hearing;

(1) **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion to Strike Portions of Jones' Affidavit and Exhibit[s] P1-P3 Submitted with Opposition Memorandum as filed by CJN, Inc. be and is hereby **GRANTED**, and accordingly that Paragraphs 17, 19, 22, 27, 30, 34, 37, 40-43 of the Affidavit and Exhibits P1-P3 are stricken;

(2) **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion for Summary Judgment filed by Defendant, CJN, Inc. d/b/a The Boot, be and is hereby **GRANTED**; and, accordingly;

(3) **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that all of Gregory Jones, Jr.'s claims against CJN, Inc. d/b/a The Boot and The Boot Bar & Grill are dismissed with prejudice; and

(4) **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that this constitutes a Final Judgment

Mr. Jones' timely appeal of the judgment follows.

## ASSIGNMENT OF ERROR

In his sole assignment of error, Mr. Jones contends that the trial court erred in granting summary judgment in favor of CJN because "such [a] determination required the weighing of evidence, which is impermissible on summary judgment." Though he does not specifically list it as an assignment of error, Mr. Jones also argues in his appellate brief that the trial court erred by granting CJN's Motion to Strike. We begin our discussion with the standard of review and the principles applicable to the summary judgment procedure.

## DISCUSSION

### *SUMMARY JUDGMENT PRINCIPLES*

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action . . . ." La. C.C.P. art. 966(A)(2). It

11

"is favored and shall be construed to accomplish these ends." *Id. See also Citron v. Gentilly Carnival Club, Inc.,* 2014-1096, p. 10 (La. App. 4 Cir. 4/15/15), 165 So.3d 304, 311-12. "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3).

An appellate court applies the *de novo* standard of review in examining the trial court's ruling on a motion for summary judgment and utilizes "the same criteria that govern the trial court's determination of whether summary judgment is appropriate." *Knox v. Elite Prot. Sols. & Willie's Chicken Shack, LLC*, 2021-0419, p. 9 (La. App. 4 Cir. 10/13/21), ___ So.3d ___, ___, 2021 WL 4771758, at *4 (quoting *Pilet v. Pilet Distribs.*, 2020-0319, p. 5 (La. App. 4 Cir. 12/30/20), 312 So.3d 1154, 1159). "Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law." *Hood v. Cotter,* 2008-0215, 2008-0237, p. 9 (La. 12/2/08), 5 So.3d 819, 824 (citing *Smith v. Our Lady of the Lake Hosp.*, 1993-2512, p. 26 (La. 7/5/94), 639 So.2d 730, 750).

On a motion for summary judgment, "[t]he burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). The party seeking summary judgment has the burden of proving there is no genuine issue of material fact. *Suire v. Lafayette City-Par. Consol. Gov't,* 2004-1459, 1460, 1466, pp. 26-27 (La. 4/12/05), 907 So.2d 37, 56 (citing La. C.C.P. art. 966(C)(2); *Champagne v. Ward,* 2003-3211 (La. 1/19/05), 893 So.2d 773, 776). If the movant satisfies the initial burden, the burden shifts to the party opposing summary judgment to present factual support

sufficient to show he will be able to satisfy the evidentiary burden at trial. *Id.*; *see also La. High Sch. Athletics Ass'n, Inc. v. State*, 2012-1471, p. 18 (La. 1/29/13), 107 So.3d 583, 598.

"However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather, to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Knox*, 2021-0419, p. 9, ___ So.3d at ___, 2021 WL 4771758, at *5 (quoting *Pilet*, 2020-0319, p. 6, 312 So.3d at 1159). "It is only after the motion has been made and properly supported that the burden shifts from the mover to the non-moving party." *Id.*, 2021-0419, p. 10, ___ So.3d at ___, 2021 WL 4771758, at *5 (quoting *Pilet*, 2020-0319, p. 6, 312 So.3d at 1159). Thereafter, "the adverse party [must] produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1). The adverse party may not rely on mere allegations or denials to defeat a motion for summary judgment but must provide specific facts showing that a genuine issue remains for trial, and failure to do so will result in the rendering of the summary judgment. La. C.C.P. art. 967(B). "[I]f the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact" and summary judgment is appropriate. *Knox*, 2021-0419, pp. 9-10, ___ So.3d at ___, 2021 WL 4771758, at *5 (quoting *Pilet*, 2020-0319, p. 6, 312 So.3d at 1159).

In considering a motion for summary judgment, the trial court cannot make credibility determinations but must construe reasonable factual inferences in favor of the party opposing the motion, resolving all doubt in favor of the opponent. *Citron*, 2014-1096, p. 12, 165 So.3d at 312. "A genuine issue is a triable issue." *Knox*, 2021-0419, p. 10, ___ So.3d at ___, 2021 WL 4771758, at *5 (quoting *Pilet*, 2020-0319, p. 6, 312 So.3d at 1159). "More precisely, an issue is genuine if reasonable persons could disagree." *Id.* However, "[i]f on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue." *Id.* "A fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." *Id.* "Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *Id.* "Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of substantive law applicable to the case." *Id.* Thus, in order to determine whether the trial court's grant of summary judgment was proper in the matter *sub judice*, we must analyze the applicable substantive law regarding vicarious liability (respondeat superior).

Before we reach that portion of our analysis, however, we first review Mr. Jones' contention that the trial court erred in granting CJN's Motion to Strike. We do so to determine whether the stricken portions of Mr. Jones' affidavit and Exhibits P1, P-2, and P-3 are admissible pieces of summary judgment evidence that should be considered in connection with our *de novo* review of whether summary judgment was proper in this matter.

***STRIKING OF PARAGRAPHS OF AFFIDAVIT AND EXHIBITS***

As discussed, CJN filed a September 21, 2021 Reply, within which CJN included a Motion to Strike regarding (1) portions of Mr. Jones' affidavit and (2) three exhibits attached to his Opposition. In the November 30, 2021 judgment, the trial court granted the Motion to Strike and struck eleven paragraphs of Mr. Jones' affidavit attached to his Opposition, namely Paragraphs 17, 19, 22, 27, 30, 34, 37, and 40-43, as well as Exhibits P-1, P-2, and P-3. In his brief to this Court, Mr. Jones argues that the trial court erred in striking these portions of his affidavit and those exhibits. Because the trial court considered Mr. Jones' affidavit and the exhibits as part of its ruling on CJN's Motion for summary judgment, we review this portion of the trial court's judgment *de novo*.

Regarding the summary judgment procedure, La. C.C.P. art. 966(D)(2) provides that "[a]ny objection to a document shall be raised in a timely filed opposition or reply memorandum." Comment (k) of the 2015 revision comments to La. C.C.P. art. 966 states:

> Subparagraph [(D)(2)] maintains the requirement that any objection to any supporting document must be raised in a timely-filed opposition or reply memorandum. The provision changes prior law by specifically removing the motion to strike as a means of raising an objection to a document offered by an adverse party in support of or in opposition to a motion for summary judgment and does not allow a party to file that motion.

Interpreting the foregoing, the Louisiana First Circuit Court of Appeal has held that "[f]iling a 'Motion to Strike' in a reply memorandum is not proper" because "[t]he filing of such a motion in a reply memorandum would necessarily allow a party an opportunity to have a contradictory hearing and introduce evidence even though La. C.C.P. art. 966(B)(3) specifically states that '[n]o additional documents may be filed with [a] reply memorandum.'" *Adolph v. Lighthouse Prop. Ins. Corp.*, 2016-

15

1275, p. 6 (La. App. 1 Cir. 9/8/17), 227 So.3d 316, 320 (citing La. C.C.P. art. 966, La. C.C.P. art. 966, cmt. (k) (2015)).

Nevertheless, "[i]t is well-settled that a pleading's nature is determined by its substance, not its caption." *Adolph*, 2016-1275, p. 1, 227 So.3d at 323 (Welch, J., concurring) (citing La. C.C.P. art. 865; *Revere v. Reed*, 1995-1913, p. 2 (La. App. 1 Cir. 5/10/96), 675 So.2d 292, 297, n.1; *Fussell v. Reed*, 1995-0398, p. 2 (La. App. 1 Cir. 11/9/95), 664 So.2d 1214, 1215, n.1). Moreover, "[t]he characterization of a pleading by the litigant is not controlling and the duty of the courts is to look through a pleading's caption to ascertain its substance and do substantial justice to the parties." *Adolph*, 2016-1275, p. 1, 227 So.3d at 324 (Crain, J., concurring) (citing *Smith v. Cajun Insulation, Inc.*, 392 So.2d 398, 402, n.2 (La. 1980); *Greene v. Succession of Alvarado*, 2015-1960, p. 29 (La. App. 1 Cir. 12/27/16), 210 So.3d 321, 339). With these precepts in mind and when considering CJN's Reply in light of the applicable summary judgment procedure, it is clear that in substance, CJN objected to portions of Mr. Jones' affidavit based on lack of personal knowledge; portions of Mr. Jones' affidavit as inadmissible hearsay; and Exhibits P-1, P-2, and P-3 due to Mr. Jones' alleged failure to authenticate the exhibits and to identify them as true and correct copies of the documents they purport to be. Procedurally, these were objections raised in a reply pursuant to La. C.C.P. art. 966(D)(2). Thus, regardless of CJN's decision to caption its objections as a "Motion to Strike," the substance of the objections was set forth in the Reply memorandum. Hence, CJN sufficiently pled its objections. *See* La. C.C.P. art. 966(D)(2); *Adolph*, 2016-1275, p. 1, 227 So.3d at 323 (Welch, J., concurring). Therefore, we turn our analysis to the objections raised in CJN's Reply to determine whether to consider the subject paragraphs in Mr. Jones'

affidavit and Exhibits P-1, P-2, and P-3 in our *de novo* review of the motion for summary judgment. *See Adolph*, 2016-1275, p. 8, 227 So.3d at 321. *See also Labarre v. Occidental Chem. Co.*, 2021-1331, p. 1 (La. App. 1 Cir. 3/30/22), 2022 WL 1008928, at *1.

**(1) Portions of Mr. Jones' Affidavit**

As discussed, CJN objected in its Reply to Paragraphs 17, 19, 22, 27, 30, 34, 37, and 40-43 of Mr. Jones' affidavit. "The trial court, and [the appellate] court on *de novo* review, may only consider evidence [on a motion for summary judgment] that is admissible under the express provisions of La. C.C.P. [a]rts. 966-67." *Huggins v. Amtrust Ins. Co. of Kan., Inc.*, 2020-0516, p. 5 (La. App. 1 Cir. 12/30/20), 319 So.3d 362, 366 (citing *Horrell v. Alltmont*, 2019-0945 (La. App. 1 Cir. 7/31/20), 309 So.3d 754, 761-62). Louisiana Code of Civil Procedure Article 967(A) states, in pertinent part, that "[s]upporting and opposing affidavits [in connection with a motion for summary judgment] shall be made on personal knowledge" and "shall set forth such facts as would be admissible in evidence . . . ." This Court has defined "personal knowledge" for the purpose of a supporting affidavit as "something which a witness actually saw or heard, as distinguished from something a witness learned from some other person or source." *Harris v. Boh Bros. Constr. Co.*, 2020-0248, p. 8 (La. App. 4 Cir. 5/26/21), 322 So.3d 397, 405 (quoting *Capital One Bank (USA), NA v. Sanches*, 2013-0003, p. 6 (La. App. 4 Cir. 6/12/13), 119 So.3d 870, 873-74). It "encompasses only those facts which the affiant saw, heard or perceived with his [or her] own senses." *Id.* Further, the affidavit must establish how the affiant obtained the knowledge. *Id.* Regarding admissibility, La. C.E. art. 802 states that "[h]earsay is not admissible except as otherwise provided by this Code or other legislation." The Louisiana Code of

Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." La. C.E. art. 801(C).

In Paragraphs 34, 37, and 40-43 of his affidavit, Mr. Jones stated that Mr. Elledge was charged with battery on January 24, 2014; that his counsel requested to depose Mr. Elledge on January 20, 2016; that Mr. Jones' attorney through the Orleans Parish Sheriff's Office made several unsuccessful attempts to serve a notice of deposition on Ms. O'Donnell, including one at her college graduation; and that Ms. O'Donnell relocated to California. This information does not constitute personal information because it is not comprised of "facts which [Mr. Jones] saw, heard or perceived with his own senses." *See Harris,* 2020-0248, p. 8, 322 So.3d at 405. Moreover, Mr. Jones does not establish in the affidavit how he obtained the information contained in these paragraphs. *Id.* Paragraphs 17, 19, 22, 27, and 30 of Mr. Jones' affidavit each contain statements from someone other than Mr. Jones, namely Ms. O'Donnell (Paragraph 17); an unidentified person (Paragraphs 19 and 27); Mr. Elledge (Paragraph 22); and an employee of the Boot (Paragraph 30). Accordingly, Paragraphs 17, 19, 22, 27, and 30 constitute hearsay. *See* La. C.E. art. 801(C).

We note that Mr. Jones argues in his brief on appeal that these portions of his affidavit are admissible as present sense impressions[3] or statements against

---

[3] Louisiana Code of Evidence Article 803 is titled "[h]earsay exceptions; availability of declarant immaterial." It provides, in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .

interest,[4] which are two exceptions to the Code of Evidence's prohibition on hearsay. However, Mr. Jones failed to raise these arguments before the trial court and cannot raise them for the first time on appeal. *See La. High Sch. Athletics Ass'n, Inc.*, 2012-1471, p. 14, 107 So.3d at 596, n.13 (citing *Segura v. Frank*, 1993-1271, p. 15 (La. 1/14/94), 630 So.2d 714, 725); *In re: Precept Credit Opportunities Fund, L.P.*, 2021-0428, p. 5 (La. App. 4 Cir. 1/19/22), ___ So.3d ___, ___, 2022 WL 178603, at *4, *writ denied*, 2022-00341 (La. 5/10/22), 337 So.3d 910; Uniform Rules, Courts of Appeal, Rule 1-3).

---

> (3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's testament.

La. C.E. art. 803(3).

[4] Louisiana Code of Evidence Article 804 is titled "[h]earsay exceptions; declarant unavailable." It states, in pertinent part:

> B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

La. C.E. art. 804(B)(3).

19

Thus, per La. C.C.P. art. 967, Paragraphs 17, 19, 22, 27, 30, 34, 37, and 40-43 are inadmissible evidence on a motion for summary judgment. Next, we consider whether Exhibits P-1, P-2, and P-3 are admissible.

**(2) Exhibits P-1, P-2, and P-3**

As discussed, CNJ also objected to three exhibits attached to Mr. Jones' Opposition, including a May 4, 2016 "New Orleans Municipal Court Case Chronology Report" concerning Mr. Elledge (P-1); a January 20, 2016 e-mail from counsel for Mr. Jones to counsel for CJN asking to depose Mr. Elledge and Ms. O'Donnell (P-2); and a May 17, 2017 letter from counsel for Mr. Jones to the Clerk of Court for Orleans Civil District Court requesting the issuance of a subpoena to Ms. O'Donnell (P-3). Louisiana Code of Civil Procedure Article 966(A)(4) states that "[t]he only documents that may be filed in support of or in opposition to the motion [for summary judgment] are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." Comment (c) to the 2015 revision comments to La. C.C.P. art. 966 explains that "[s]ubparagraph (A)(4) . . . contains the exclusive list of documents that may be filed in support of or in opposition to a motion for summary judgment." It further provides that "[s]ubparagraph [(A)(4)] intentionally does not allow the filing of documents that are not included in the exclusive list . . . unless they are properly authenticated by an affidavit or deposition to which they are attached." *See also Raborn v. Albea*, 2016-1468, p. 10 (La. App. 1 Cir. 5/11/17), 221 So.3d 104, 111 (citing La. C.C.P. art. 966, cmt. (c) (2015)). Regarding authentication, the Louisiana Code of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to

admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A).

Exhibits P-1, P-2, and P-3 are not included within the exclusive list of documents that may be admitted into evidence and considered in support of or in opposition to a motion for summary judgment. *See* La. C.C.P. art. 966(A)(4). Additionally, our review of Mr. Jones' Opposition reveals that he failed to identify or authenticate these documents with "evidence sufficient to support a finding that the matter in question is what its proponent claims." La. C.E. art. 901(A). Instead, his affidavit merely references them by stating in Paragraphs 34, 37, and 40, respectively, "See Exhibit P-1"; "See Exhibit P-2"; and "See Exhibit P-3":

> 34. On January 24, 2014, [Mr.] Elledge was charged with Battery and was arraigned. See Exhibit P-1.
>
> . . . .
>
> 37. On January 20, 2016, [Mr. Jones], through his attorney, requested the opportunity to depose [Mr.] Elledge. See Exhibit P-2.
>
> . . . .
>
> 40. [Mr. Jones'] attorney[] made several attempts to serve a Notice of Deposition on [Ms.] O'Donnell but [was] unsuccessful. See Exhibit P-3.

Without the proper identification and authentication, we conclude that these exhibits were not admissible with Mr. Jones' Opposition.

In sum, CJN's Motion to Strike was procedurally improper; however, CJN properly raised its objections in a reply pursuant to La. C.C.P. art. 966(D)(2), and the trial court correctly excluded Paragraphs 17, 19, 22, 27, 30, 34, 37, and 40-43, as well as Exhibits P-1, P-2, and P-3, as inadmissible summary judgment evidence. Because those paragraphs and exhibits are not proper summary judgment evidence,

we will not consider them in connection with our *de novo* review of CJN's Motion for Summary Judgment. We now turn to the substantive law concerning vicarious liability to determine whether the grant of summary judgment was proper in this matter.

### *VICARIOUS LIABILITY (RESPONDEAT SUPERIOR)*

We next consider Mr. Jones' assignment of error contending that the trial court incorrectly granted summary judgment in favor of CJN because such a determination required the weighing of evidence, which is impermissible on summary judgment. In particular, Mr. Jones asserts that the record before the trial court established the existence of a genuine issue of material fact as to whether Mr. Elledge and John Doe were employees of CJN acting in the course and scope of their employment on the night of the fight. In his Petition as amended, Mr. Jones argued that CJN was vicariously liable for the injuries he sustained in the fight with Mr. Elledge because Mr. Elledge was employed by the Boot at the time. As discussed, the applicable substantive law determines materiality on a motion for summary judgment; so, in order to determine whether the trial court's grant of summary judgment was proper in the matter *sub judice*, we turn our analysis to the applicable substantive law regarding the vicarious liability of employers for the actions of their employees. *See Knox*, 2021-0419, p. 10, ___ So.3d at ___, 2021 WL 4771758, at *5 (quoting *Pilet*, 2020-0319, p. 7, 312 So.3d at 1159).

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2315(A). "Louisiana courts employ the duty/risk analysis when deciding whether to impose liability under La. C.C. art. 2315." *Duronslet v. Wal-Mart Stores, Inc.*, 2022-0019, p. 17 (La. App. 4 Cir. 7/27/22), ___ So.3d ___, ___, 2022 WL 2965529, at *8 (citing *Cosey on*

22

*Behalf of Hilliard*, 2019-0756, 2019-0785, p. 17 (La. App. 4 Cir. 11/12/20), ___ So.3d ___, ___, 2020 WL 6687515, at *8). Under the duty/risk analysis, a plaintiff must prove five elements:

> (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element).

*Id.* The defendant is not liable if the plaintiff fails to prove even one of the duty/risk analysis elements. *Id.* (citing *James v. Ernest N. Morial New Orleans Exhibition Hall Authority*, 2018-0198, p. 6 (La. App. 4 Cir. 12/26/18), 262 So.3d 958, 963). The threshold determination in a negligence action is the first element, i.e., whether the defendant owed a duty to the plaintiff. *Id.*, 2022-0019, p. 18, ___ So.3d at ___, 2022 WL 2965529, at *8. "Louisiana Civil Code Article 2320 establishes the duty element for employers by enumerating the doctrine of respondeat superior [or vicarious liability], by which 'employers are answerable for the damage occasioned by their employees in the exercise of the functions in which they are employed.'" *Id.* (citing *Grabowski v. Smith & Nephew, Inc.*, 2014-0433, 2013-1409, p. 24 (La. App. 3 Cir. 10/1/14), 149 So.3d 899, 915).[5]

This liability for employers, however, "extends only to those acts which are within the course and scope of the tortfeasor employee's employment." *Robinson v Ky Quang Nguyen*, 2016-0258, p. 6 (La. App. 4 Cir 9/21/16), 201 So.3d 922, 927 (citing *Baumeister v. Plunkett*, 1995-2270, p. 3 (La. 5/21/96), 673 So.2d 994, 996;

---

[5] Louisiana Civil Code Article 2320 provides, in pertinent part, that "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

*Orgeron on Behalf of Orgeron v. McDonald*, 1993-1353, p. 4 (La. 7/5/94), 639 So.2d 224, 226). "The course of employment test refers to time and place." *Benoit v. Capitol Mfg. Co.*, 617 So.2d 477, 479 (La. 1993). "The scope of employment test examines the employment-related risk of injury." *Id.* The Louisiana Supreme Court has established a test for determining the vicarious liability of an employer, which includes consideration of the following factors: (1) whether the tortious act was primarily employment-rooted; (2) whether the violence was reasonably incidental to the performance of the employment duties; (3) whether the act occurred on the employer's premises; and (4) whether the act occurred during the hours of employment. In determining whether an employee was in the course and scope of his employment at the time of the employee's tortious conduct each case must be decided on its own facts. *Robinson*, 2016-0258, p. 7, 201 So.3d at 927 (citing *LeBrane v. Lewis*, 292 So.2d 216, 218-19 (La. 1974)). This Opinion will refer to these as the "*LeBrane* factors."

In *Robinson*, the plaintiff, Mr. Robinson, engaged in an altercation inside a store with a clerk and was forced to leave. 2016-0258, p. 2, 201 So.3d at 924. After he crossed the street, an unknown person came up to him and stabbed him. *Id.* Mr. Robinson insisted the assailant was a store owner or employee, but he could not identify him and presented no evidence that the assailant actually worked at the store. *Id.*, 2016-0258, pp. 2-3, 201 So.3d at 925. In reviewing the claim of vicarious liability, the Court stated:

> For the employer to be vicariously liable, "the tortious conduct of the [employee must be] so closely connected in time, place, and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct instituted by purely personal considerations entirely extraneous to the employer's interest." *Baumeister*, [19]95-2270[,] p. 3, 673 So.2d at 966 (quoting *LeBrane v. Lewis*, 292 So.2d 216, 217 (La. 1974)). "An

24

employer is not vicariously liable merely because his employee commits an intentional tort on the business premises during working hours." *Id*. "Vicarious liability will attach in such a case only if the employee is acting within the ambit of his assigned duties and also in furtherance of his employer's objectives." *Id.*, [1995-]2270[,] pp. 3-4, 673 So.2d at 996. Nonetheless, the employee's conduct need only be reasonably incidental to the performance of the employee's official duties, and need not be exclusively employment rooted for liability to attach.

*Robinson*, 2016-0258, pp. 6-7, 201 So.3d at 927. Ultimately, this Court found that Mr. Robinson failed to show that the stabbing committed by the unidentified assailant was closely related in time, place, and causation to any employee's duties as to be a risk of harm attributable to the store's business. *Id.*, 2016-0258, p. 8, 201 So.3d at 928. Instead, it classified the assailant's actions as "conduct motivated by purely personal considerations entirely extraneous to the interests of [the store]." *Id.*, 2016-0258, p. 9, 201 So.2d at 928. Finding that the stabbing was not within the course and scope of the unnamed assailant's employment, the Court concluded that the store was not vicariously liable for his tortious act. *Id.*

Likewise, in *Jackson v. Bally's Louisiana, Inc.*, the plaintiff, Ms. Jackson, was knocked down at a casino by someone she could not identify but whom she believed to be a casino employee because he wore clothing similar to a uniform. 2009-1574, p. 1 (La. App. 4 Cir. 4/7/10), 36 So.3d 1001, 1002. In part, this Court found that Ms. Jackson's affidavits in opposition to the casino's motion for summary judgment were based solely on inadmissible hearsay. *Id.*, 2009-1574, p. 5, 36 So.3d at 1004. This Court affirmed the granting of the Motion for Summary Judgment, finding that Ms. Jackson could not satisfy her burden of showing that the person who knocked her down was an employee acting within the course and scope of his employment. *Id.* We now consider if the record demonstrates a

genuine issue of material fact regarding whether CJN has vicarious liability for the actions of (1) Mr. Elledge and (2) John Doe.

**(1) Whether CJN has Vicarious Liability Regarding Mr. Elledge**

Applying the foregoing principles to the matter *sub judice*, we examine the record and assume facts most favorable to Mr. Jones as the plaintiff. *See Robinson*, 2016-0258, p. 8, 201 So.3d at 927. Considering the facts in light of the *LeBrane* factors, we find that the affidavits and the deposition testimony support the trial court's granting of summary judgment. CJN has demonstrated that Mr. Jones will be unable to prove that Mr. Elledge was acting in the course and scope of his employment at the time of the altercation. Mr. Elledge and Ms. O'Donnell's affidavits assert that Mr. Elledge was not on duty on the day and evening of the fight. Mr. Maiuri's affidavit and his deposition both state that Mr. Elledge was not working on that date. Moreover, Mr. Elledge's actions in punching Mr. Jones could not have been in furtherance of any of his duties as a door man for the Boot; instead, his actions were purely personal. *See Robinson*, 2016-0258, p. 9, 201 So.2d at 928.

After CJN so demonstrated, the burden shifted to Mr. Jones to counter this evidence. Mr. Jones' deposition testimony, however, shows that any knowledge he had about Mr. Elledge's employment at the Boot was based upon what he was told by someone on the scene. According to his testimony, which would be inadmissible hearsay at trial, he learned only that Mr. Elledge was employed by the Boot: his testimony fails to indicate that he knew that Mr. Elledge was on duty at the time of the altercation. Contrary to Mr. Jones' assertion that the trial court weighed contradictory evidence from him and CJN and found CJN's evidence more credible, the trial court properly found that Mr. Jones would not be able to

provide competent evidence if the case went to trial to show that Mr. Elledge was acting in the course and scope of his employment when he punched Mr. Jones.

**(2) Whether CJN has Vicarious Liability Regarding John Doe**

Mr. Jones also has not demonstrated that he would be able to present any competent evidence to show that John Doe, who allegedly held him while Mr. Elledge punched him, was a Boot employee engaged in the course and scope of his employment. Indeed, Mr. Jones admitted in his deposition that other than his observation that the man was wearing a Boot t-shirt, he had no other knowledge that the man worked there or was on duty that night. Like the plaintiff in *Jackson*, Mr. Jones' sole reason for alleging that the man was an employee was because of his attire. He has never identified this person, and he has not shown that he could carry his burden of showing the man was an on-duty employee of the Boot if the matter were to proceed to trial.

*APPARENT AUTHORITY*

Alternatively, Mr. Jones argues that because Mr. Elledge and John Doe were wearing Boot t-shirts, they evidenced apparent authority to act on the Boot's behalf, thereby imputing their actions to the company. "Apparent authority is defined as 'the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.'" *Duronslet*, 2022-0019, p. 28, ___ So.3d at ___, 2022 WL 2965529, at *13 (quoting *Indep. Fire Ins. Co. v. Able Moving & Storage Co., Inc.*, 1994-1982, p. 4, 650 So.2d 750, 752). In discussing the doctrine of apparent authority, the Louisiana Third Circuit Court of Appeal has explained:

> Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated this authority to the agent. In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person. However, the third person has the same rights in relation to the principal under either actual or apparent authority. Further, apparent authority operates only when it is reasonable for the third person to believe the agent is authorized and the third person actually believes this.

> . . . .

> Louisiana courts have utilized the doctrine of apparent authority to protect third persons by treating a principal who has manifested an agent's authority to third persons as if the principal had actually granted the authority to the agent.

*Grabowski*, 2014-0433, 2013-1409, pp. 21-22, 149 So.3d at 913-14 (quoting *Tedesco v. Gentry Dev., Inc.*, 540 So.2d 960, 963 (La. 1989)). The burden of proof rests with the party seeking to bind the principal. *Id.*, 2014-0433, 2013-1409, p. 22, 149 So.3d at 914 (citing *Eakin v. Eakin*, 2007-0693, p. 6 (La. App. 3 Cir. 12/19/07), 973 So.2d 873, 877).

In *Luccia v. Cummings*, the defendant, Mr. Cummings, was a levee board policeman who was working a paid detail in uniform at a nightclub when he injured a worker. 1994-0416, p. 1 (La. App. 5 Cir. 11/16/94), 646 So.2d 1142, 1143. The court held that the fact that the officer was in uniform did not prove that the levee board was liable for his tortious actions under the doctrine of apparent authority. *Id.*, 1994-0416, p. 3, 646 So.2d at 1144 (citing *Washington v. Reed*, 624 So.2d 465, 469 (La. App. 2 Cir. 1993)).

In the matter *sub judice*, Mr. Jones points to Mr. Maiuri's testimony that he told employees not to wear their uniform t-shirts when not on duty. However, Mr.

Maiuri also testified that there was nothing in the employee manual so specifying; and Ms. Napoli's affidavit indicated that the company had no such policy.

Moreover, as previously discussed, Mr. Jones has not presented any evidence that Mr. Elledge and John Doe were on duty and were engaged in the course and scope of their duties when the altercation occurred. Instead, their actions were personal in nature. Based upon our *de novo* review of the record, we conclude that the trial court did not err by granting CJN's Motion for Summary Judgment, and this assignment of error has no merit.[6]

## DECREE

For the foregoing reasons, we find that CJN's Motion to Strike was procedurally improper; however, we conclude that CJN properly raised its objections in a reply pursuant to La. C.C.P. art. 966(D)(2) and that the trial court correctly excluded Paragraphs 17, 19, 22, 27, 30, 34, 37, and 40-43, as well as Exhibits P-1, P-2, and P-3, as inadmissible summary judgment evidence. Additionally, we affirm the trial court's grant of CJN's Motion for Summary Judgment.

**AFFIRMED**

---

[6] Additionally, we note that based on the record, it is unlikely that Mr. Jones could prove that the altercation occurred on the Boot's premises. The evidence presented by both parties shows that the altercation took place outside the Dough Bowl's walk-up window, which was a separate entity from the Boot and its convenience store.